**Application of the CLOROX COMPANY.**

**Appeal No. 77–628.**

United States Court of Customs and Patent Appeals.

June 30, 1978.

Stephen M. Westbrook, San Francisco, Cal. (Phillips, Moore, Weissenberger, Lempio & Majestic, San Francisco, Cal.), attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, John W. Dewhirst, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

Appeal from a Trademark Trial and Appeal Board (board) decision, *In re Clorox Co.*, 196 USPQ 140 (TTAB 1977), affirming the refusal of the examiner to register the designation ERASE for "laundry soil and stain remover." We affirm.

*Background*

Appellant, The Clorox Company, filed an application[1] to register ERASE on the Principal Register as a trademark for a laundry soil and stain remover. Use of the mark since November 13, 1975, was asserted. The examiner rejected the application on two grounds: (1) that ERASE so resembles STAIN ERASER previously registered for a stain remover[2] as to be likely, when applied to applicant's goods, to cause confusion or mistake, or to deceive, as proscribed by § 2(d) of the Lanham Act, as amended (Act), 15 U.S.C. § 1052(d) and (2) that ERASE is merely descriptive within the meaning of § 2(e)(1) of the Act. The board affirmed the examiner on both grounds.

1. Serial No. 74,336, filed January 15, 1976.

2. Reg. No. 1,035,099, dated March 2, 1976, on the Supplemental Register, use in commerce since March 11, 1974, having been asserted.

3. We do not reach the alternative ground, *i. e.*, that ERASE is merely descriptive. Appellant

The board noted that the language of § 2(d) is not restricted to marks registered on the Principal Register. Recognizing that registration on the Supplemental Register may indicate a merely descriptive significance, at least at time of registration, the board stated:

[A]lthough registrations of highly suggestive or merely descriptive marks are entitled to some measure of protection against the registration of marks that may conflict therewith * * *, the scope is circumscribed by virtue of the character of the mark so that the permissible degree of similarity between the marks may be greater than in the case of arbitrary or coined terms. [196 USPQ at 143.]

The board considered ERASE and ERASER "virtually indistinguishable" and the addition of the descriptive word STAIN insufficient to avoid confusion when both marks are associated with a stain remover.

*Issues*

The issues are (1) whether a mark registered on the Supplemental Register can be used under § 2(d) as a basis for refusing registration of another mark on the Principal Register; and (2) whether simultaneous use of ERASE on a laundry soil and stain remover and STAIN ERASER on a stain remover would be likely to lead to confusion. 15 U.S.C. § 1052(d).[3]

OPINION

(1) *Use Under § 2(d) of Marks Registered on the Supplemental Register*

Appellant argues that marks on the Supplemental Register may not serve as a basis for refusal to register under § 2(d). We disagree.

argues that neither the public nor the trade speaks of "erasing" stain or soil from laundry, citing dictionary definitions for "erase." The Supplemental Registration of STAIN ERASER, however, demonstrates that at least one party in the trade uses a variant of ERASE in connection with a stain remover product.

In addressing this issue for the first time,[4] we begin with the statute.[5] Under § 2(d), the examiner and the board are charged with the duty of refusing registration of a mark, the use of which is "likely * * * to cause confusion * * *," because of its resemblance to "a mark registered in the Patent and Trademark Office [PTO]." The definitional section of the Act, § 45, provides, in pertinent part:

The term "registered mark" means a mark registered in the United States Patent and Trademark Office under this chapter or under the Act of March 3, 1881, or the Act of February 20, 1905, or the Act of March 19, 1920. The phrase "marks registered in the Patent and Trademark Office" means registered marks. [15 U.S.C. § 1127]

Section 23 of the Act indicates that the Supplemental Register is "a continuation of the register provided in paragraph (b) of section 1 of the Act of March 19, 1920 * * *." 15 U.S.C. § 1091. Section 26, 15 U.S.C. § 1094, provides:

The provisions of this chapter shall govern so far as applicable applications for registration and registrations on the supplemental register as well as those on the principal register, but applications for and registrations on the supplemental register shall not be subject to or receive the advantages of sections 1052(e), 1052(f), 1057(b), 1062(a), 1063 to 1068, inclusive, 1072, 1115 and 1124 of this title. [Sections 2(e), 2(f), 7(b), 12(a), 13 to 18, inclusive, 22, 33, and 42 of the Act.]

Section 2(d)'s absence from the enumeration of statutory provisions made inapplicable to the Supplemental Register establishes unequivocally its applicability to "registrations on the supplemental register."

That the decision respecting likelihood of confusion is made in the PTO by comparing an applicant's mark and description of his goods with the registered marks on file in the PTO, and the goods described in the registrations of those marks, should not lead to the notion that the locus of potential confusion is in the files of the PTO.[6] The confusion sought to be prevented by the statute is not that of examiners, lawyers,

---

**4.** The board has consistently concluded that a mark registered on the Supplemental Register is "a mark registered in the Patent and Trademark Office" within the meaning of 15 U.S.C. § 1052(d), *In re Amtel, Inc.*, 189 USPQ 58 (TTAB 1975); *In re Hunke & Jochheim*, 185 USPQ 188 (TTAB 1975); *In re Knight's Home Products, Inc.*, 173 USPQ 566 (TTAB 1972), as has the Commissioner. *See Ex parte Auto-Lite Battery Corp.*, 114 USPQ 500 (Comm'r 1957); *Ex parte Jacobson & Sons, Inc.*, 97 USPQ 465 (Comm'r 1953). *Cf. Hess v. Helene Curtis Industries, Inc.*, 94 USPQ 11 (Comm'r 1952). The solicitor cites *Standard Int'l. Corp. v. American Sponge and Chamois Co., Inc.*, 394 F.2d 599, 55 CCPA 1155, 157 USPQ 630 (1968). That case, however, involved an opposition, wherein the opposer relied upon sales volume and promotion expenditures relating to its mark on the Supplemental Register. Whether a mark registered on the Supplemental Register is a "mark registered in the Patent and Trademark Office" under 15 U.S.C. § 1052(d) was not at issue.

**5.** The pertinent statutory language reads:
No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
    *    *    *    *    *    *

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive * * *. [15 U.S.C. § 1052(d)]

**6.** The board opinion, quoted above, refers to "protection [of marks] against the registration of marks that may conflict therewith." The "protection" envisaged by § 2(d) is not that of marks against the mere registration of other marks. Hence, the "conflict" must occur in the marketplace. Moreover, a refusal to register even a "conflicting" mark does not "protect" a registered mark against use of the conflicting mark in the marketplace. *In re E.I. duPont deNemours & Co.*, 476 F.2d 1357, 1364, 177 USPQ 563, 569 (Cust. & Pat.App.1973). Users of trademarks and owners of registrations, when they seek "protection of their marks" are necessarily protecting their right to an unconfused public, and are thus serving the statutory goal of protecting the public against confusion, mistake or deception. The sole duty of the examiner, the board, and this court, under § 2(d), is to determine whether confusion is likely.

board members, or judges. Confusion is likely, if at all, only in the marketplace, where marks are used. The public is both unaware of, and distinctly disinterested in, whether a mark is registered on either register. Registration is itself incapable of causing confusion. Under § 2(d), the PTO is not charged with a duty of permitting or denying a right to use any mark, or of protecting any registered mark against the mere registration of similar marks (*unless* use of the latter would be likely to lead to confusion).

We conclude, therefore, that a mark registered on the Supplemental Register can be used as a basis for refusing registration to another mark under § 2(d) of the Act.[7]

### (2) *Likelihood of Confusion*

Appellant says STAIN ERASER is merely descriptive, as evidenced by its presence on the Supplemental Register, and, because a merely descriptive term does not indicate origin, it cannot support a conclusion of likelihood of confusion. Though this court has referred to an application for Supplemental Registration of a particular term as an admission of descriptiveness, *see Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 1299, 59 CCPA 764, 767, 172 USPQ 361, 363 (1972), appellant's argument ignores § 23 of the Act, under which marks registered on the Supplemental Register are required to be "capable of distinguishing applicant's goods or services * * *." 15 U.S.C. § 1091. Further, appellant disregards the existence of varying degrees of descriptiveness. Appellant erroneously attributes to marks on the Supplemental Register, a degree of "descriptiveness" equivalent to that of a generic or common descriptive word or term, and its argument that the merely descriptive nature of some marks on the Supplemental Register makes their use incapable of pro-

ducing confusion is but another approach to the notion that marks on the Supplemental Register are not citable under § 2(d).[8]

In arguing that STAIN ERASER must be shown to have acquired a secondary meaning, before it can support a conclusion that confusion is likely, appellant again attempts to limit citations under § 2(d) to marks on the Principal Register, on which marks that have acquired a secondary meaning are registrable. 15 U.S.C. § 1052(f). Appellant appears also to suggest in this argument that the issue here should be resolved through publication of its mark and the possibility of an opposition by any person who believes he would be damaged by the registration. But § 2(d) imposes on the Commissioner the duty of refusing registration when he concludes that confusion, mistake, or deception, is likely, and the Act imposes on the Commissioner and on us the duty of making that subjective judgment. *In re Apparel, Inc.*, 366 F.2d 1022, 1023, 54 CCPA 733, 734–35, 151 USPQ 353, 354 (1966). That duty is unaffected by the basis upon which a potential opposer may found an opposition. To require publication for opposition whenever a Supplemental Registration is cited under § 2(d), would result in an unwarranted diminution of the duty of ex parte trademark examination imposed upon the PTO by the Act.

Appellant next posits a requirement that citation of marks on the Supplemental Register under § 2(d) be limited to marks identical to that sought to be registered. No reason exists, however, for the application of different standards to registrations cited under § 2(d). The level of descriptiveness of a cited mark may influence the conclusion that confusion is likely or unlikely, *see Sure-Fit Products Co. v. Saltzson Drapery Co.*, 254 F.2d 158, 160, 45 CCPA 856, 859,

---

7. The language of the Act being clear and unambiguous, resort to legislative history is unnecessary. Interested parties will find an excellent summary of the legislative history in the footnote to Examiner-in-Chief Federico's opinion in *Ex parte Jacobson & Sons, Inc., supra.*

8. Appellant has a cancellation proceeding available under 15 U.S.C. § 1092, if registrant was not entitled to registration because the mark is a common descriptive term and thus incapable of indicating origin of the goods, or because the mark is not used by the registrant or has been abandoned.

117 USPQ 295, 297 (1958), but that fact does not preclude citation under § 2(d) of marks on the Supplemental Register.

Regarding the conclusion that a likelihood of confusion is present, we agree with the board's closing statement:

[T]he terms "ERASE" and "ERASER" are virtually indistinguishable and the addition of the descriptive word "STAIN" to "ERASER" is insufficient to distinguish between the marks as a whole and to avoid confusion because applicant's "ERASE" mark is used in connection with and would be associated with a stain remover. [196 USPQ at 143.]

### Conclusion

We conclude that marks on the Supplemental Register are citable under § 2(d), and that concurrent use of ERASE and STAIN ERASER on the goods named is likely to cause confusion, or mistake, or to deceive.

*AFFIRMED.*

MARKEY, Chief Judge, specially concurring.

The foregoing opinion speaks for a unanimous court. These comments reflect a view respecting the underlying rationale for the holding that the citation of marks "registered" on either register is permissible in ex parte examination under § 2(d).

Section 2(d) refers to marks "registered" or "previously used" and to likelihood of confusion. Because the confusion sought to be prevented by the Act is in the marketplace, where marks are used, the underlying basis for reference to marks "registered" is necessarily the presumption that registered marks cited by an examiner under § 2(d) are in use. For absent that presumption, confusion would be not only unlikely, but impossible. The statutory ("likely * * * to cause confusion, or to cause mistake, or to deceive * * *") basis for refusal to register would be irrelevant if the examiner's citation of a registered mark under § 2(d) did not carry with it the presumption that the registered mark is in use.[1] Upon a proper showing that use of the registered mark cited by the examiner has been abandoned, without intent to resume, the presumption is destroyed and the registration may be cancelled. 15 U.S.C. § 1064 (Principal Register); 15 U.S.C. § 1092 (Supplemental Register). Because use of the mark is essential to a finding of likelihood of confusion, the presumption must be applied to "registered" marks, cited by an examiner, including those on the Supplemental Register.

"The Court of Customs and Patent Appeals has consistently held that the introduction of a trademark registration presents prima facie proof of continuing use of the mark * * *." *Friedman v. Sealy, Inc.,* 274 F.2d 255, 257, 124 USPQ 196, 198 (CA10 1959). In *Gillette Co. v. Kempel,* 254 F.2d 402, 404, 45 CCPA 920, 922, 117 USPQ 356, 357 (1958), this court stated:

1. Except for its provisions respecting foreign applicants, the entire thrust and expectation of the Act is that the registers in the PTO should reflect marks used in the marketplace, and that registrations of marks not in continuing use be cancelled. Though use in commerce is a prerequisite for registration on the Principal Register, 15 U.S.C. § 1051, and use for a year prior to the filing date of an application for registration on the Supplemental Register is required, 15 U.S.C. § 1091, a registration, absent contrary proof, cannot be viewed as entitled to no presumption beyond use as of the filing date of the application. Affidavits of continuing use, or excusable non-use, accompanied by evidence, are required during the sixth year following registration, 15 U.S.C. § 1058(a), 37 CFR 2.161, or the registration will be cancelled. Applications for renewal of a registration must be supported by evidence that the mark is still in use, or of excusable non-use, 15 U.S.C. § 1059. Assignments require transfer of the "goodwill of the business connected with the use of the * * * mark," 15 U.S.C. § 1060. Benefits of the Act are claimable by 1881 Act or 1905 Act registrants by affidavit listing the goods "on which [the] mark is in use," 15 U.S.C. § 1062(c). If use of the mark is proved abandoned, even when the right to use is incontestable under § 15, the registration is not conclusive evidence of the exclusive right to use, 15 U.S.C. § 1115(b)(2). In sum, what is subject to registration, and to maintenance on a register, are rights established, and maintained viable, by use, and only by use, of a mark.

[T]he filing of a regular application for the registration of a trademark \* \* accompanied by specimens of the mark as actually used should be taken as *prima facie* proof that the applicant was the owner of the mark on the date the application was filed, and that fact having been established the presumption must arise that the applicant continued to own the mark and to use it.

The same presumption applies after a registration has been granted and, accordingly, a registration is *prima facie* evidence of continuing use of the registered mark beginning on the filing date of the application on which the registration was granted.

No basis exists for a view that marks on the Principal Register are presumptively in use and marks on the Supplemental Register are not. Though one may own a supplemental registration, no one may own a merely descriptive mark itself. The presumption of use, however, is not derived from, nor dependent upon, the presumption of ownership of the mark. Extended and substantially exclusive use may, under 15 U.S.C. § 1052(f), result in registration on the Principal Register and in the concomitant presumption of ownership under 15 U.S.C. § 1057(b), but ownership of the mark is not a necessary element of the presumption that a mark registered on the Supplemental Register is in use. That a supplemental registration is not prima facie evidence of registrant's ownership of the registered mark, the validity of the registration, or registrant's exclusive right to use, 15

U.S.C. § 1057(b), 1094, does not conflict with the presumption that the mark is in use.

In inter partes proceedings, evidence establishing earlier and continuing use of marks by third parties, and the effect of that use on the mind of the public, may take a variety of forms and may be adduced through testimony of witnesses.[2] In inter partes proceedings, therefore, the presumption that registered marks of third parties are in use is itself an insufficient basis on which to determine the issue presented. Accordingly, this court has repeatedly refused to permit the presumption to substitute for the proof required of the party offering third party registrations.[3] In *In re Helene Curtis Industries, Inc.,* supra note 3, involving third party registrations cited by an applicant in an ex parte trademark examination, this court said:

> We will not assume any knowledge on the part of the purchasing public of mere registrations in the Patent Office and neither will we assume that marks are in continuing use, so as to have had any effect on the mind of the purchasing public, merely because they have been registered. [305 F.2d at 494, 49 CCPA at 1371, 134 USPQ at 503–04.]

The refusal in *Helene Curtis* was not a refusal to assume that registered marks are used, but a refusal to assume that registered marks are *so* used as to affect the mind of the purchasing public in the matter sought to be established by the applicant in *Helene Curtis.*[4] More recently, in *Stana-*

---

**2.** Allegations of dates of use, exhibits attached to pleadings, and specimens of use in application and registration files, are not considered evidence of use on behalf of the party who filed them in inter partes proceedings. 37 CFR 2.126.

**3.** See *San Fernando Electric Mfg. Co. v. JFD Electronics Components Corp.,* 565 F.2d 683, 685, 196 USPQ 1, 2 (Cust. & Pat.App.1977); *Stanadyne, Inc. v. Lins,* 490 F.2d 1396, 1397, 180 USPQ 649 (Cust. & Pat.App.1974); *AMF Inc. v. American Leisure Products, Inc.,* 474 F.2d 1403, 1406, 177 USPQ 268, 269–70 (Cust. & Pat.App.1973); *Tiffany & Co. v. National Gypsum Co.,* 459 F.2d 527, 530, 59 CCPA 1063, 1067, 173 USPQ 793, 795 (1972); *Clairol Inc. v.*

*Roux Laboratories, Inc.,* 442 F.2d 980, 981, 58 CCPA 1170, 1171, 169 USPQ 589 (1971); *Lilly Pulitzer, Inc. v. Lilli Ann Corp.,* 376 F.2d 324, 325, 54 CCPA 1295, 1297, 153 USPQ 406, 407 (1967); *J.C. Hall Co. v. Hallmark Cards, Inc.,* 340 F.2d 960, 964, 52 CCPA 981, 986, 144 USPQ 435, 439 (1965); cf. *In re Belgrade Shoe Co.,* 56 CCPA 1298, 1299–300, 411 F.2d 1352, 1353, 162 USPQ 227 (1969); *In re Helene Curtis Industries, Inc.,* 305 F.2d 492, 494–95, 49 CCPA 1367, 1371–72, 134 USPQ 501, 503–04 (1962) (ex parte trademark examination cases).

**4.** In *Tiffany & Co. v. National Gypsum Co.,* supra note 3, there is an indication that the court will not assume that registered marks are in continuing use, and the qualifying language

*dyne, Inc. v. Lins, supra* note 3 involving an opposition proceeding, this court said:

> [I]n the absence of evidence of the extent of actual continuing use of registered marks, mere registrations are entitled to little weight in establishing whether there is likely to be confusion because registrations by themselves do not indicate how the public mind may have been conditioned. [490 F.2d at 1397, 180 USPQ at 649.]

Third party registrations are often cited in an effort to prove that, because the marks appearing in those registrations are similar to the mark in use by an applicant, an opposer, or cancellation petitioner, the public has learned to distinguish among them and would not be confused by the addition to the marketplace of the mark sought to be registered or by continued use of the mark sought to be maintained on a register.[5] Whether the public has been so conditioned turns on whether it has been actually exposed to the similar third party marks in the marketplace, and on the extent and intensity of that exposure. A registration does not *inherently* evidence that exposure, and the presumption that registered marks of third parties are in use does not clothe the cited registrations with that evidentiary effect.

In ex parte refusals to register, yet another factor comes into play. The examiner does not have at hand the sources of evidence available to applicants and to the parties in an inter partes proceeding. The examiner must, therefore, be permitted to rely on the presumption that a registered mark he cites is currently being used. As above indicated, denial of that presumption would deny the examiner the required evidence of prior and continuing use of a particular mark on particular goods, *i. e.*, evidence on which to base his § 2(d)-required

position that confusion would be likely when the applicant's mark is applied to applicant's goods in the marketplace. Because of .that presumption available to the examiner, a supplemental registration he cites becomes probative, and if not cancelled, persuasive evidence of a prior and continuing use of a mark which, if it so resembles an applicant's mark that confusion in the marketplace is likely, will sustain a refusal to register.

MILLER, Judge, with whom BALDWIN, Judge, joins, specially concurring.

I also join in the opinion of the court affirming the Trademark Trial and Appeal Board on section 2(d). I do so in view of the definition of "registered mark" in Lanham Act section 45, which includes marks on the Supplemental Register.

However, I would point out that the view expressed in Chief Judge Markey's specially concurring opinion regarding the underlying rational of presumed use of registered marks for purposes of ex parte examination under section 2(d) is not supported by the statute in the case of marks on the Supplemental Register. Section 2(d) provides that no trademark shall be refused registration unless it "consists of or comprises a mark which so resembles a mark registered" in the PTO "as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." It is the Commissioner who is to make the determination of likelihood of confusion; and his determination is to be based on a comparison of an applicant's mark, applied to its respective goods, with marks registered in the PTO. His refusal to register under this part of section 2(d) is based on the existence of a registration in the PTO—not on any presumption of use, and a primary purpose of such authority is to protect

---

of *Helene Curtis* is not repeated. The opinion cites *Helene Curtis* on the point, however, and the absence, from one opinion, of the qualifying language which appears in all of the cases listed in note 3, should not be taken as an indication that no presumption of use attaches to registered marks.

5. Describing the effort as showing that the mark of a reference registration, or of opposer, or of petitioner, is a "weak" mark, or is a mark entitled to "a limited range of protection," tends to becloud the issue, which remains whether confusion is likely when the marks involved are used in connection with the respective goods.

trademark registrants from "misappropriation" of their marks. [1946] U.S. Code Cong. Service, p. 1274.

Indeed, if a presumption of use were necessary to support an ex parte rejection under section 2(d), reversal of the board would be indicated in this appeal. Section 26 of the Act provides that ownership of a registration on the Supplemental Register is *not* given any of the presumptions of section 7(b) of the Act. These include "ownership of the mark," and ownership "imparts prima facie evidence of use." *J.C. Hall Co. v. Hallmark Cards, Inc.*, 340 F.2d 960, 962, 52 CCPA 981, 984, 144 USPQ 435, 437 (1965). *Accord, Massey Junior College, Inc. v. Fashion Institute of Technology*, 492 F.2d 1399, 1402, 181 USPQ 272, 274 (Cust. & Pat.App.

1974). Accordingly, the owner of a mark on the Supplemental Register would have to affirmatively prove use of that mark. *See Aloe Creme Laboratories, Inc. v. Bonne Bell, Inc.*, 168 USPQ 246 (TTAB 1970). This contrasts with the presumption of continuing use of a mark by the owner of a registration on the Principal Register. *Gillette Co. v. Kempel*, 254 F.2d 402, 404, 45 CCPA 920, 921–22, 117 USPQ 356, 357 (1958).