Paper No. 12
SIMMS/MD

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Southern Belle Frozen Foods, Inc.
_____

Serial No. 74/670,815
_____

Arthur G. Yeager for Southern Belle Frozen Foods, Inc.

Jennifer D. Richard, Trademark Examining Attorney, Law
Office 101 (R. Ellsworth Williams, Managing Attorney)
_____

Before Simms, Hanak and Walters, Administrative Trademark
Judges.

Opinion by Simms, Administrative Trademark Judge:

Southern Belle Frozen Foods, Inc. (applicant), a

Florida corporation, has appealed from the final refusal of

the Trademark Examining Attorney to register the mark

SEAFOOD ROYALE for "frozen seafood, namely uncooked crab

based seafood blend in a natural crab shell to be served

after cooking by the purchaser as an appetizer or several

[sic, should be "served"] as an entree, excluding any

packaged cooked meals."[1]  The Examining Attorney has refused

_____

[1] Application Serial No. 74/670,815, filed May 8, 1995, claiming
use in commerce since June 1988.  In the original application,

registration under Section 2(d) of the Act, 15 USC §1052(d), on the basis of Registration No. 672,988, issued January 20, 1959, on the Supplemental Register, for the mark SHRIMP ROYALE for "packaged cooked meal consisting of fried shrimp, potatoes, sauce and a muffin or roll."  The registration, issued to Chicken Delight, Inc., has been renewed.

Briefly, the Examining Attorney argues that applicant's mark SEAFOOD ROYALE and the registered mark SHRIMP ROYALE have similar commercial impressions because both contain either the broad generic term "SEAFOOD" or a specific type of seafood ("SHRIMP") as well as the term ROYALE.  The Examining Attorney argues that, not only is it proper to give more or less weight to a feature of a mark as long as the ultimate conclusion is based on a consideration of the marks in their entireties, but also applicant here has admitted that the dominant element of its mark is the term ROYALE.  Brief, 5.  Words, such as "seafood" and "shrimp," which are generic, may be accorded less weight, the Examining Attorney argues, in the likelihood-of-confusion analysis because consumers will not attribute any source-indicating significance to those words.  The Examining Attorney also argues that the respective goods are closely

applicant disclaimed the word "SEAFOOD" apart from the mark, and alleged that its mark has become distinctive of its goods as a

related food items.  In this regard, the Examining Attorney argues that the description of goods in the cited registration is broad enough to include goods such as packaged convenience meals sold in supermarkets and grocery stores.  The Examining Attorney has made of record copies of third-party registrations which, according to the Examining Attorney, demonstrate that the same manufacturer may offer both complete seafood meals with side dishes as well as items such as individual seafood entrees.

Applicant, on the other hand, argues that its mark is readily distinguishable from the registered mark and that, in addition, registrant's goods are sold only in registrant's restaurants.

Upon careful consideration of this record and the arguments of the attorneys, we believe that confusion is likely.  As the Examining Attorney has pointed out, the goods being compared need not be identical or directly competitive in order for likelihood of confusion to be found—-they need only be related in some manner, or the conditions surrounding their marketing be such, that they could be encountered by the same purchasers under circumstances that, because of the similarities of the marks, could give rise to the mistaken belief that they come from the same source.  See In re Albert Trostel & Sons Co.,

_____

result of substantially exclusive and continuous use in commerce

3

29 USPQ2d 1783 (TTAB 1993).  Here, applicant's frozen

uncooked seafood and registrant's packaged cooked meal

featuring fried shrimp are, we believe, commercially related

products that could well be sold in the same supermarkets

and grocery stores to the same class of purchasers.  In this

regard, as the Examining Attorney argues, the identification

in the registration is not limited with respect to channels

of trade.  Accordingly, we must presume that registrant's

packaged cooked meals includes goods of all such types sold

in all normal channels of trade for those goods, including

packaged pre-cooked dinners sold in the frozen food sections

of grocery stores and supermarkets.  See In re Elbaum, 211

USPQ 639 (TTAB 1981).  Similarly, applicant's frozen

uncooked seafood may be sold in frozen food sections of

grocery stores and supermarkets.  Although not specifically

introduced for this purpose, some of the third-party

registrations also tend to show that both cooked and

uncooked food may come from the same source (for example,

"fresh, frozen, canned, and smoked seafood").  See In re

Donnay International, S.A., 31 USPQ2d 1953 (TTAB 1994); In

re Albert Trostel & Sons Co., supra; and In re Mucky Duck

Co., 6 USPQ2d 1467 (TTAB 1988).  As the Examining Attorney

notes, these third-party registrations suggest that the

goods involved here may emanate from the same source.  We

---

for five years preceding the filing date of the application.

4

also note that both applicant's frozen seafood product and registrant's packaged shrimp meal are relatively inexpensive items that are purchased by ordinary consumers without a great deal of care.

Turning then to the marks, each mark begins with a generic word and is followed by the word ROYALE. While the marks obviously differ in the generic element of each mark, we are in agreement with the Examining Attorney that consumers familiar with registrant's SHRIMP ROYALE packaged shrimp meal may well conclude that applicant's SEAFOOD ROYALE frozen crab product is a new line of seafood from the maker of the SHRIMP ROYALE product. If we had any doubt on this matter, that doubt must be resolved in favor of the registrant and prior user.[2]

---

[2] With respect to the comments made by the dissent, we offer the following: Preliminarily, the Act itself, the Board and the courts have consistently referred to the subject matter of a Supplemental Register registration as a "mark." See, for example, Section 23 of the Act ("All marks capable of distinguishing applicant's goods or services…may be registered on the supplemental register…") and In re The Clorox Co., 578 F.2d 305, 198 USPQ 337, 340 (CCPA 1978)("We conclude, therefore, that a mark registered on the Supplemental Register can be used as a basis for refusing registration to another mark under §2(d) of the Act."). See also Towers v. Advent Software Inc., 913 F.2d 942, 16 USPQ2d 1039, 1042 n. 2 (Fed. Cir. 1990). As noted above, the registration issued almost 40 years ago and has been renewed.
  Second, the Examining Attorney never refused registration of applicant's mark under §2(e)(1), but, in the original application, applicant stated that its mark had acquired distinctiveness as the result of substantially exclusive and continuous use for five years preceding the filing of the application. That statement has been entered and apparently would appear on any registration which might issue.
  Next, the information provided by the dissent concerning the derivation of the term "royale" is given in the etymology of the

word "royale," not its definition.  This word is defined in Webster's Third New International Dictionary Unabridged (1976) as

> 1: an egg custard cooked and set in a mold,
> cut into various shapes when cold, and added
> as a garnish to clear soups  2: a changement
> de pied with a beating together of the legs
> while in the air

On this record, therefore, we cannot agree that "royale" is a "descriptive laudatory word."

The full sentence, quoted in part by the dissent, from In re Hunke & Jochheim, 185 USPQ 188, 189 (TTAB 1975), and quoted by us in In re Central Soya Co., Inc., 220 USPQ 914, 917 (TTAB 1984), is:

> That is, terms falling within the former
> category [merely descriptive or highly
> suggestive terms] have been generally
> categorized as "weak" marks, and the
> scope of protection extended to these
> marks has been limited to the substantially
> identical notation *and/or* to the subsequent
> use and registration thereof for substan-
> tially similar goods. (Emphasis added)

In *Hunke & Jochheim,* the Board was not laying down a different rule for finding likelihood of confusion in cases involving descriptive or suggestive marks, or marks on the Supplemental Register.  Rather, the Board was merely observing that, for such marks, the scope of protection is, in the absence of other considerations, more limited than with arbitrary or coined marks.  See also *Clorox*, 198 USPQ at 341 ("Appellant next posits a requirement that citation of marks on the Supplemental Register under §2(d) be limited to marks identical to that sought to be registered. No reason exists, however, for the application of different standards to registrations cited under §2(d).  The level of descriptiveness of a cited mark may influence the conclusion that confusion is likely or unlikely…") and In re Smith and Mehaffey, 31 USPQ2d 1531, 1533 (TTAB 1994)("Because in most cases marks are registered on the Supplemental Register because they are descriptive, the scope of protection accorded to them has been consequently narrow, so that likelihood of confusion has normally been found only where the marks and goods are substantially similar.").

In re Texas Instruments Inc., 193 USPQ 678, 679 (TTAB 1976), involving the mark "COPPERCLAD," the case seemed to turn on the differences in the goods and the sophistication of the purchasers, not the marks, which were very similar ("It would appear…that we are concerned with distinctly different goods which will normally be purchased as a result of different motivations and under different conditions and circumstances by individuals who would fall within the category of discriminating

Decision:  The refusal of registration is affirmed.

R. L. Simms

C. E. Walters
Administrative Trademark
Judges, Trademark Trial
and Appeal Board

Hanak, Administrative Trademark Judge, dissenting:

It is the position of the Examining Attorney that the

"term"[3] SHRIMP ROYALE and the mark SEAFOOD ROYALE "both

---

purchasers that normally buy with care after an assessment of

all sources of supply.")
      Finally, because the general public is, obviously, unaware
of the register on which a mark they encounter is registered, it
is worth noting what the Court said in *Clorox*, 198 USPQ at 340:

> That the decision respecting likelihood of
> confusion is made in the PTO by comparing
> an applicant's mark and the description of
> his goods with the registered marks on file
> in the PTO, and the goods described in the
> registrations of those marks, should not lead
> to the notion that the locus of potential con-
> fusion is in the files of the PTO. The confu-
> sion sought to be prevented by the statute is
> not that of examiners, lawyers, board members,
> or judges.  Confusion is likely, if at all, only
> in the marketplace, where marks are used. The
> public is both unaware of, and distinctly dis-
> interested in, whether a mark is registered on
> either register.

[3] "A word, symbol or device on the Supplemental Register is not,
strictly speaking, a 'mark.' … [Rather, it] is only 'capable' of
someday becoming a 'mark' upon the acquisition of secondary
meaning."  2 J. McCarthy, McCarthy on Trademarks and Unfair
Competition Section 19:37 at pages 19-70 to 19-71 (4th ed. 1998).

consist of a descriptive term relating to seafood along with the arbitrary term ROYALE." (Office Action No. 3, page 2). As applied to applicant's goods and registrant's goods, the word "royale" is not arbitrary, but rather it is a descriptive laudatory word. The word "royale" is listed in English dictionaries as the feminine form of the French (and English) word "royal." The listing for "royale" makes explicit reference to the definition of "royal" by stating "more at 'royal.'" The word "royal" is in turn defined as meaning "worthy of royalty: magnificent." See Webster's Third New International Dictionary (1976) at page 1982. Indeed, contradicting her earlier contention that the word "royale" is arbitrary, the Examining Attorney at page 3 of her brief notes that this word "evokes thoughts of royalty." In light of the above, I believe that most United States consumers would view "royale" as a fancy form of "royal," and not as a word meaning only "egg custard" or "changement de pied," as contended by the majority in footnote 2. Moreover, the term "royale" is also defined as a "name given to different [food] preparations." The Encyclopedia of Food, Wine & Cookery (1961) (emphasis added).

Based upon the foregoing, I am of the view that the cited term SHRIMP ROYALE is clearly descriptive of a meal

---

Applicant, unlike registrant, established to the satisfaction of the PTO that its term (SEAFOOD ROYALE) had acquired secondary meaning and thus functioned as a trademark.

containing fried shrimp in that said term means "magnificent shrimp."  If the word "royale" were truly arbitrary as contended by the Examining Attorney and apparently the majority, then the cited term SHRIMP ROYALE would not have been relegated to the Supplemental Register, but rather would have been permitted to be registered on the Principal Register, with a disclaimer of SHRIMP.

It has been stated that the word "royal" is "frequently used to indicate high quality," and that "it has been consistently held that trademarks will not ordinarily be held confusingly similar solely because each of them includes [the word 'royal']."  Sears, Roebuck v. Hofman, 119 USPQ 137, 138 (CCPA 1958).  This Board also stated that the word "royal" is indeed laudatory and is, at most, a weak source identifier.  In re Blanger, Inc., 218 USPQ 742, 743 (TTAB 1983).  Professor McCarthy explains that laudatory terms are "regarded as being descriptive."  1 J. McCarthy, McCarthy on Trademarks and Unfair Competition Section 11:17 at page 11-21 (4th ed. 1998).  Of course, such descriptive terms are weak source identifiers and accordingly are entitled to a very limited scope of protection.  3 J. McCarthy, McCarthy on Trademarks and Unfair Competition Section 23:48 at pages 23-103 to 23-105 (4th ed. 1998).

Given the descriptive laudatory nature of the words "royal" and "royale," it is not surprising that they have

been frequently used by others for a wide array of products including seafood items.  In this regard, it is noted that in the first Office Action, the Examining Attorney cited not only the term SHRIMP ROYALE as a bar, but also the mark ROYAL BRAND registered for "frozen seafood; namely, shrimp" as a bar to registration.  Registration No. 1,804,637.  The registrations of ROYAL BRAND and SHRIMP ROYALE are owned by different companies.  In the second Office Action, the Examining Attorney, without any explanation whatsoever, withdrew the cite to the registration for ROYAL BRAND.

In view of the fact that the cited term SHRIMP ROYALE consists of a generic term (SHRIMP) combined with a clearly descriptive laudatory term (ROYALE), said term is entitled to an extremely narrow of scope of protection.  As a practical matter, this narrow scope of protection means that a clearly descriptive term registered on the Supplemental Register will prevent the registration only of a subsequent mark which is "substantially identical and [is] used on substantially identical goods or services."  2 J. McCarthy, McCarthy on Trademarks and Unfair Competition, Section 19:37 at page 19-71 (4th ed. 1998).

To be clear, the Court in Clorox stated that "no reason exists" for applying different likelihood of confusion standards based on whether the cited mark is on the Principal Register or the Supplemental Register other than

10

the cited mark's "level of descriptiveness." In re The Clorox Co., 578 F.2d 305, 198 USPQ 337, 341 (CCPA 1978). However, in affirming a refusal to register the mark ERASE on the Principal Register based upon an existing registration of the term STAIN ERASER on the Supplemental Register, the Clorox Court went on to note that the goods were absolutely identical (stain removers) and that "the terms ERASE and ERASER are virtually indistinguishable and the addition of the descriptive word STAIN to ERASER is insufficient to distinguish between the marks as a whole and to avoid confusion." In re The Clorox Co., 198 USPQ at 341. In similar fashion, the Court affirmed a refusal to register ROPELOK on the Principal Register based upon a pre-existing registration of ROPELOCK on the Supplemental Register noting that the mark and term were virtually identical and that both were used on "closely related safety equipment." In re Research and Trading Corp., 793 F.2d 1276, 230 USPQ 49, 50 (Fed. Cir. 1986).

This Board has also accorded a very limited scope of protection to descriptive marks registered on the Supplemental Register. Indeed, Judge Simms has acknowledged the fact that "the Board, too, has given limited protection to descriptive marks registered on the Supplemental Register." In re Central Soya Co., Inc., 220 USPQ 914, 917 (TTAB 1984). Quoting from an earlier Board decision, Judge

Simms went on to note that "the scope of protection extended to these [descriptive] marks [registered on the Supplemental Register] has been limited to the substantially identical notation … for substantially similar goods."  Central Soya, 220 USPQ at 917 (Registration of LA POSADA on the Supplemental Register for lodging and restaurant services did not bar registration of POSADA on the Principal Register for Mexican style prepared frozen enchiladas).  See also In re Texas Instruments Inc., 193 USPQ 678 (TTAB 1976) (Registration of COPPERCLAD on the Supplemental Register for copper coated electrodes did not bar registration of COPPER CLAD on the Principal Register for copper wire); In re Hunke & Jochheim, 185 USPQ 188 (TTAB 1975) (Registration of DURABUL on the Supplemental Register for stationery articles did not bar registration of HIG-DURABLE on the Principal Register for stationery articles).

In my view, the mark SEAFOOD ROYALE and the term SHRIMP ROYALE are by no means substantially identical.  At a minimum, their differences are far greater than the differences between COPPERCLAD and COPPER CLAD, and POSADA and LA POSADA.

In addition, applicant's goods and registrant's goods are by no means substantially identical.  Indeed, they are only minimally related in that they both merely contain a seafood item, albeit a different seafood item.  Applicant's

12

goods are "frozen seafood, namely uncooked crab based seafood blend in a natural crab shell to be served after cooking by the purchaser as an appetizer or served as an entrée, excluding any packaged cooked meals." (emphasis added). Registrant's goods are "packaged cooked meal consisting of fried shrimp, potatoes, sauce and a muffin or a roll." (emphasis added). Thus, applicant's goods and registrant's goods differ in a number of respects. First, registrant's goods are a complete meal consisting of fried shrimp, potatoes, sauce and a muffin or roll. Applicant's goods are a single item, namely, a crab based seafood blend in a crab shell. Second, registrant's goods are cooked. Applicant's goods are uncooked and must be cooked by the purchaser in order to be safely consumed.

Given the fact that registrant's term SHRIMP ROYALE consists of a generic term (SHRIMP) and a clearly descriptive laudatory term (ROYALE), I would hold that SHRIMP ROYALE is entitled to an extremely narrow scope of protection such that its registration on the Supplemental Register should serve to prevent the registration of only substantially identical marks for substantially identical goods. In this case, registrant's term and goods are by no means substantially identical to applicant's mark and goods.

Accordingly, I would reverse the refusal to register.

E. W. Hanak
Administrative Trademark
Judge, Trademark Trial
and Appeal Board