This Opinion is a
Precedent of the TTAB

Mailed: April 29, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Dolce Vita Footwear, Inc.*

_____

Serial No. 88554722

_____

Susan A. Smith of Ballard Spahr LLP,
    for Dolce Vita Footwear, Inc.

Alison F. Pollack, Trademark Examining Attorney, Law Office 106,
    Mary I. Sparrow, Managing Attorney.

_____

Before Taylor, Adlin and Larkin,
    Administrative Trademark Judges.

Opinion by Taylor, Administrative Trademark Judge:

Dolce Vita Footwear, Inc. ("Applicant") seeks registration on the Principal

Register of the proposed mark CLEAR (in standard characters) for, as amended,

> "Baggage tags, Handbags, Make-up bags sold empty,
> Purses and wallets, Tote bags, All-purpose sport bags, All-
> purpose carrying bags, Business card cases, Clutches, Coin
> purses, Credit card cases; all of the foregoing excluding
> transparent goods" in International Class 18.[1]

---

[1] Application Serial No. 88554722 was filed on July 31, 2019, based upon Applicant's allegation of a bona fide intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

The Trademark Examining Attorney refused registration of Applicant's mark under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the grounds that it is deceptively misdescriptive or, in the alternative, merely descriptive, of Applicant's identified goods. We affirm the refusal to register on the ground that Applicant's mark is deceptively misdescriptive; the alternative ground for refusal that the mark is merely descriptive is moot.

## I.    Procedural Background

A review of the examination history will help clarify how the alternative refusals were issued. As originally filed, the application identified the goods as "baggage tags; handbags; make-up bags sold empty; purses and wallets; tote bags; all purpose [sic] sport bags; all-purpose carrying bags; business card cases; clutches; coin purses; credit card cases." The Examining Attorney initially refused registration on the ground that the applied-for mark is merely descriptive of the goods, relying in part on the definition of "clear" as "[e]asily seen through; transparent,"[2] and arguing that the word "clear" is used by competitors to describe a feature of bags.

---

[2] October 28, 2019 Office Action; TSDR 5. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (https://www.ahdictionary.com/word/search.html?q=clear).

Citations to the examination record refer to the USPTO's online Trademark Status and Document Retrieval system (TSDR) by page number in the downloadable .pdf versions of the documents.

Citations to TTABVUE throughout the decision are to the Board's public online database that contains the appeal file, available on the USPTO website, www.USPTO.gov. The first number represents the docket number in the TTABVUE electronic case file and the second represents the page number(s), if applicable.

In response to the Office Action, Applicant explained that there are no transparent items in its CLEAR collection, and made of record materials showing items included in its "CLEAR" collection.[3]

Applicant, generally referencing an October 28, 2019 telephone conference with the Examining Attorney, also addressed the yet-to-be-raised issue of deceptive misdescriptiveness,[4] arguing that its use of CLEAR is completely arbitrary, and that it is not likely that persons could be fooled into thinking Applicant's identified bags are transparent because the consumer must see the goods when purchasing them and will see that they are not transparent.

In her November 22, 2019 Office Action, the Examining Attorney maintained the mere descriptiveness refusal and, based on Applicant's admission that its bags were not transparent, alternatively refused registration on the ground that the applied-for mark is deceptively misdescriptive of the goods.

Applicant responded to the November 22, 2019 Office Action by arguing against the refusals, and by proposing an amendment to its identification of goods to add the following limiting language: "all of the foregoing excluding transparent bags, purses, and clutches."

---

[3] The materials submitted by Applicant only show use of the proposed CLEAR mark in connection with footwear. Accordingly, these materials have little probative value in this case which involves non-transparent baggage tags, bags and cases.

[4] Applicant particularly noted in its response that when its counsel advised the Examining Attorney that its products are not transparent, the Examining Attorney responded that if the mark is not descriptive, then it is deceptively misdescriptive. Applicant's November 14, 2019 Response; TSDR 7.

The Examining Attorney then issued a Final Office Action on February 10, 2020, maintaining both Section 2(e)(1) refusals as to all the identified goods.[5]

Prior to the deadline for filing a notice of appeal, on June 29, 2020, Applicant filed a Request for Reconsideration, proposing a second amendment to its identification of goods to exclude "transparent goods" from all of the identified items and offering additional arguments against the Section 2(e)(1) refusals.[6]

The Examining Attorney denied the Request for Reconsideration and apparently accepted the further amendment to the exclusionary language to the identification of goods.[7]

---

[5] The Final Office Action did not directly address Applicant's proposed amendment to the identification of goods, however, the Examining Attorney includes the limiting language in her references to the goods in her brief. We therefore consider the amendment to have been accepted. We would be remiss if we failed to point out that when a proposed amendment is acceptable to the Examining Attorney, the next Office Action should so state, leaving no room for doubt going forward or in the case of an appeal.

[6] Applicant asserts in its Request for Reconsideration that the Examining Attorney untimely submitted new arguments and evidence and should have instead issued a non-final Office Action. A review of the action shows that no new issues were raised and the refusals were confined to the previously stated merely descriptive and deceptively misdescriptive refusals. *See In re Adlon Brand GmbH*, 120 USPQ2d 1717, 1725 (TTAB 2016) ("Neither Applicant's new evidence and arguments regarding the outstanding refusal under Section 2(e)(4), submitted with its request for reconsideration, nor the Examining Attorney's submission of additional evidence regarding the same refusal, provided in response to that request, raised a new issue such as to make appropriate a nonfinal Office Action ….") (citations omitted). The Examining Attorney's inclusion of supplementary evidence directed to additional enumerated goods in support of previously issued refusals was not inappropriate. Applicant could have addressed the additional evidence in its Request for Reconsideration, but did not do so.

[7] We presume so because the amendment was not rejected, nor was any rationale offered in support of rejection. Although not addressed in the denial of the request for reconsideration, the proceeding records have been updated and the subsequently-filed appeal briefs refer to amended goods. This decision refers to the goods as amended. In addition, the Examining Attorney's failure to expressly accept Applicant's second proposed amendment restricting all of the identified goods to non-transparent items may have led to the maintenance of the

Applicant then filed a timely Notice of Appeal on July 7, 2020. The appeal is fully briefed.

## II.   Whether Clear is Deceptively Misdescriptive of Applicant's Goods

Because of the amendment to exclude all "transparent goods" from the application, we start with the deceptive misdescriptiveness refusal.

### A.   The Examining Attorney's Arguments and Evidence

The Examining Attorney maintains that Applicant's proposed mark is deceptively misdescriptive of the identified goods. The Examining Attorney particularly argues: (1) the evidence shows that the proposed CLEAR mark means "easily seen through; transparent" which is merely descriptive of Applicant's goods in that the public will believe that Applicant provides transparent bags; (2) it is plausible that Applicant's bags, baggage tags and cases would possess such a feature because the evidence shows that clear bags and cases are common[8]; and (3) a reasonably prudent purchaser is likely to believe the representation (implied by  the word "clear") because it is

---

merely descriptive refusal, which, after that amendment, should have been withdrawn when the Examining Attorney ruled on the request for reconsideration.

[8] Applicant's identification of goods includes additional items in Class 28 apart from the ones specifically discussed above. However, if an applicant's mark is merely descriptive or deceptively misdescriptive for any of the listed goods in a single class in the application it cannot be registered in that class. "A descriptiveness [or deceptively misdescriptive] refusal is proper 'if the mark is descriptive [or misdescriptive] of any of the [goods or] services for which registration is sought.'" *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Stereotaxis Inc.*, 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005)).

common for bags and cases to be clear or transparent, but Applicant's identification of goods, as amended, specifically excludes transparent goods.[9]

In addition to the noted definition of the word "clear," to show that CLEAR describes a feature or characteristic that bags, cases, and baggage tags plausibly possess, the Examining Attorney submitted the following:

- Screenshots from the third-party websites of Nordstrom Rack and Bloomingdale's showing descriptive use of the word in connection with bags, as shown below:[10]



---

[9] Examining Attorney's Brief. 8 TTABVUE 5-9.

[10] October 28, 2019 Office Action; TSDR 8-9 and 15-16.



- An article in Travel and Leisure titled "9 Clear Bags You'll Actually Be Able to Find Your Stuff in for Once" states:

  - With a transparent bag, you're able to go in and grab whatever you set out for without wasting time rummaging through expired metro tickets while your bus driver rushes you in Portuguese. Plus, you'll be much more inclined to stay organized, sheerly because the world can see the contents of your bag.[11]

- An article in Rank & Style titled: "WE'VE JUST MADE FINDING THE PERFECT CLEAR HANDBAG SUPER EASY" states:

  - **Clear bags are having a moment again**, and we are definitely not mad about it. This cool nod to the '90's is also practical as stadiums have introduced a new clear bag policy in an effort to up security. … Is there any true downside to this trend? Fashion brands certainly don't seem to think so **because they have all jumped at the chance to capitalize on it in the most stylish of ways.** From essential stadium bags to playful totes to glamorous clutches, click through our list of Top 10

---

[11] November 22, 2019 Office Action; TSDR 5-6.

clear handbags to help you find the perfect, transparent addition to your wardrobe.[12]

• A screenshot of the MARK & GRAHAM website, showing a "clear striped tote" bag.[13]



• Website screen shots[14] from Amazon Fashion (www.amazon.com) featuring "clear vinyl luggage tags,"[15] Capri Designs (https://clear stadiumbags.com) featuring "clear stadium bags,"[16] Hammitt Los Angeles (www.hammitt.com) featuring "'clear' Tony SML" bag,[17] Urban Outfitters (www.urbanoutfitters.com) featuring a "clear zip wallet,"[18] Pop Sugar (www.popsugar.com) featuring a "clear makeup bag,"[19] The Container Store (www.containerstore.com) featuring "Clear Makeup Bags & Toiletry

---

[12] *Id.* at TSDR 15-22 (emphasis added). The article also includes references and links to purchase the bags, but images of only three bags are shown.

[13] *Id.* at TSDR 11.

[14] Full website citations are found at the TSDR cites.

[15] February 10, 2020 Office Action; TSDR 5-10.

[16] *Id.* at TSDR 12.

[17] *Id.* at TSDR 14-15.

[18] *Id.* at TSDR 19-20.

[19] *Id.* at TSDR 23-24.

Bags,"[20] and shopbop (www.shopbop.com) featuring clear bags, including crossbody bags.[21]

- An article from The Wall Street Journal (www.wsj.com) discussing the transparent bag trend, titled "Would You Carry a Clear Handbag? **The trend in transparent bags** is quite divisive among women. We examine the pros and cons of going clear[.]"[22]

B.    Applicable Law/Analysis

A mark is considered deceptively misdescriptive if: (1) the mark misdescribes a quality, feature, function, or characteristic of the goods or services with which it is used; and (2) consumers would be likely to believe the misrepresentation. *See In re Budge Mfg. Co.,* 857 F.2d 773, 8 USPQ2d 1259, 1260 (Fed. Cir. 1988); *In re White Jasmine LLC*, 106 USPQ2d 1385, 1394 (TTAB 2013) (citing *In re Quady Winery, Inc.*, 221 USPQ 1213, 1214 (TTAB 1984)).

As to the first part of the test, a mark is misdescriptive when it is "merely descriptive, rather than suggestive, of a significant aspect of the goods or services which the goods or services plausibly possess but in fact do not." *In re Hinton*, 116 USPQ2d 1051, 1052 (TTAB 2015) (citing *In re Shniberg*, 79 USPQ2d 1309, 1312 (TTAB 2006); *In re Phillips-Van Heusen*, 63 USPQ2d 1047, 1048 (TTAB 2005)). As to the second part, the reasonably prudent consumer test is applied in assessing whether consumers are likely to believe the misrepresentation. *In re Hinton*,

---

[20] *Id.* at TSDR 27-28.

[21] *Id.* at TSDR 31-33.

[22] *Id.* at TSDR 35-36 (emphasis added).

116 USPQ2d at 1052 (citing *R. J. Reynolds Tobacco Co. v. Brown & Williamson Tobacco Corp.*, 226 USPQ 169, 179 (TTAB 1985)).

The dictionary definition and third-party website evidence made of record by the Examining Attorney convince us that consumers will perceive CLEAR as describing a feature or characteristic that tote bags, handbags, makeup bags, wallet and baggage tags could plausibly have, namely that they are transparent, "clear," or include transparent or "clear" elements. Indeed, Applicant stated in its brief:

> For purposes of appeal, Applicant will not dispute the Examining Attorney's assertion that CLEAR means "transparent" when applied to bags and cases. … Given that, it thus follows that if a party tried to register CLEAR broadly for all forms of bags and cases, the mark would be descriptive because it would describe a feature or characteristic of *one form* of those goods ("transparent bags and cases") *within* the broader definition.

Applicant's br. pp. 4-5. (Emphasis supplied and internal citations omitted).[23] Applicant adds, however, that it "is not seeking to register CLEAR broadly for both 'transparent *and* non-transparent bags and cases;' it is only seeking to register it for non-transparent bags and cases." *Id.* (Emphasis supplied).[24] Based on the evidence of record, we have no doubt that consumers will immediately perceive the word "clear" as describing a feature or attribute that Applicant's baggage tags, and various types of bags and cases, could plausibly have. We therefore find that Applicant's restriction of its identification of goods to non-transparent or non-clear goods is sufficient to show (and in fact conclusively establishes) that the proposed CLEAR mark misdescribes a

---

[23] 6 TTABVUE 5-6.

[24] *Id* at 6.

feature or attribute of the goods in that Applicant's identified goods do not possess the characteristic of being "clear." *See generally* Trademark Manual of Examining Procedure § 1209.04 (Oct. 2018), and the authorities cited therein. Thus the first part of the test for deceptive misdescriptiveness has been satisfied.

Applicant's contention that its proposed mark CLEAR does not describe a plausible feature of its goods because it has restricted its identification to exclude transparent goods is unavailing. We cannot assume that consumers of Applicant's goods will be aware that its identification is so restricted, and the restriction is not controlling of public perception. *See In re Aquitaine Wine USA, LLC*, 126 USPQ2d 1181, 1187-88 (TTAB 2018). *Cf., e.g., In re Clorox Co.*, 578 F.2d 305, 198 USPQ 337, 340 (CCPA 1978) ("[T]he locus of potential confusion is [not] in the files of the PTO."); *In re Wada*, 48 USPQ2d 1689, 1692 (TTAB 1998) (public is unaware of disclaimers that "quietly reside" in the records of the Office).

Moreover, Applicant cannot avoid a finding of deceptive misdescriptiveness by excluding from its identification the very characteristic that its mark is misdescribing. *Cf. In re ALP of South Beach, Inc.*, 79 USPQ2d 1009, 1010 (TTAB 2006) ("We find that the word CAFETERIA used in connection with restaurant services that explicitly exclude cafeteria-style restaurants does misdescribe the services."). In addition, the record is devoid of any evidence that, as Applicant proposes, the word "clear" suggests other meanings when used for or in connection with baggage tags, bags and cases. Even so, that a term may have other meanings in different contexts is not controlling. *See In re Bright-Crest, Ltd.*, 204 USPQ 591, 593

(TTAB 1979). "It is well settled that so long as any one of the meanings of a term is descriptive [or misdescriptive], the term may be considered to be merely descriptive [or misdescriptive]." *In re Mueller Sports Med., Inc.,* 126 USPQ2d 1584, 1590 (TTAB 2018); *In re Canine Caviar Pet Foods, Inc.,* 126 USPQ2d 1590, 1598 (TTAB 2018).

Having determined that the term misdescribes the goods, we now assess whether consumers are likely to believe the misrepresentation. Again, the evidence shows that various types of bags, cases, wallets and baggage tags may be transparent or "clear" in whole or in part, and that those goods are described as such by those in the industry and by ordinary consumers. As the record reflects, "[c]lear bags are having a moment again"[25] and fashion brands have jumped to capitalize on the trend, in all likelihood because of the heighted security measures employed at airports, stadiums and other public facilities. Also, as to baggage tags, clear elements are expected so that one may easily verify ownership of one's luggage. As a result, consumers seeing the proposed mark CLEAR for baggage tags, cases, and various types of bags, in particular, are likely to believe that those goods are clear or transparent even though they are not.

We are unpersuaded by Applicant's assertion that reasonably prudent consumers are unlikely to believe the "misrepresentation," because bags and cases are displayed to potential buyers at the point of purchase for visual inspection before purchase.[26] In making this argument, Applicant relies on three Board decisions: *In re Econoheat, Inc.*, 218 USPQ 381, 383 (TTAB 1983) (SOLAR QUARTZ for space heaters), *Nw. Golf*

---

[25] November 22, 2019 Office Action; TSDR 11.

[26] 6 TTABVUE 7-8.

*Co. v. Acushnet Co.*, 226 USPQ 240, 242-43 (TTAB 1985) (POWER-STEP for golf clubs), and *In re Robert Simmons, Inc.*, 192 USPQ 331, 333 (TTAB 1976) (WHITE SABLE for paint brushes made from synthetic fibers.

We find these decisions to be distinguishable in material respects from this case. Unlike this case, the mark at issue in *Robert Simmons* included the word "sable," which is defined in, for example, the online version of MERRIAM-WEBSTER, as "the color black," yet the mark also included the term "WHITE" the antithesis of "black" so consumers would not be deceived into believing WHITE SABLE paint brushes would be made from the hair or fur of a sable.[27] In *Northwestern Golf*, unlike in this case, the term at issue ("STEP") did not necessarily have a misdescriptive meaning to consumers: purchasers would not "necessarily construe the word 'STEP' in applicant's [POWER-STEP] mark as signifying that applicant's golf club shaft has but a single step."[28] *Nw. Golf*, 226 USPQ at 242. Rather, "they might just as readily believe that the word 'STEP' is used in the mark as a synonym for 'step pattern.'" *Id.* at 243. Finally, in *Econoheat*, there did not appear to be any evidence of solar-powered quartz space heaters and, in fact, the term "Solar" referred to some other attribute of the device: the type of heat emitted. *See* 218 USPQ at 382. Here, by contrast, there is

---

[27] www.merriam-webster.com/dictionary/sable, last visited March 15, 2021. The Board may take judicial notice of dictionary definitions, including online dictionaries which exist in printed format. *See In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014), *aff'd*, 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016); *In re CyberFinancial.Net Inc.*, 65 USPQ2d 1789, 1791 n.3 (TTAB 2002).

[28] The term "step" in that context meant a discrete point on the shaft of a golf club where the shaft narrowed as it extended further from the handle and approached the club head. *Nw. Golf,* 226 USPQ at 241.

plentiful evidence of use of the term "clear" to describe transparent examples of the goods at issue, and Applicant has offered no other possible meaning the term could have in the context of these goods. Accordingly, we do not find that these cases support Applicant's arguments.

That upon visually inspecting Applicant's baggage tags, bags and cases consumers may understand that they do not include transparent or clear attributes does not negate their understanding before they inspect the goods. If Applicant's goods were to be promoted by word-of-mouth or on social media or in print (*e.g.*, in fashion blogs, magazine articles, or even Applicant's future advertising) without an image of the goods, a reasonable consumer seeking what the record shows to be a fashion trend would believe that Applicant's goods, promoted under the proposed CLEAR mark, would be transparent or clear or feature such attributes. *See, e.g., In re Woodward & Lothrop Inc.* 4 USPQ2d 1412, 1414 (TTAB 1987) (CAMEO held deceptively misdescriptive of jewelry items because while a reasonable purchaser carefully examining jewelry which has no cameos or cameo-like elements may not be deceived into believing that it does, not all jewelry would be purchased in that manner; some jewelry may be purchased from catalogs which either inadequately describe or depict the jewelry items.); *see also ALP of South Beach*, 79 USPQ2d at 1014 (finding that pre-sale deception may occur without a sale taking place based on the deception). Pre-sale discussion and promotion leading to deception is likely in this case given the popularity of transparent bags.

In view of the above, we find that the second part of the deceptive misdescriptiveness test also has been satisfied.

## C. Conclusion

After reviewing the evidence of record, we find that both parts of the deceptive misdescriptiveness test have been satisfied and are unrebutted and, accordingly, Applicant's proposed mark is deceptively misdescriptive within the meaning of Section 2(e)(1). In view of our determination on the ground of deceptive misdescriptiveness, the alternative ground for refusal that the mark is merely descriptive is moot.

**Decision**: The refusal to register Applicant's proposed mark CLEAR for the identified goods on the ground that it is deceptively misdescriptive under Trademark Act Section 2(e)(1) is affirmed.