# United States Court of Appeals for the Federal Circuit

05-1059
(Serial No. 78/108,674)

IN RE STEREOTAXIS, INC.

Bryan K. Wheelock, Harness, Dickey & Pierce, PLC, of St. Louis, Missouri, argued for appellant.

Nancy C. Slutter, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the Patent and Trademark Office. With her on the brief were John M. Whealan, Solicitor, and Linda Moncys Isacson, Associate Solicitor.

Appealed from: United States Patent and Trademark Office,
Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

05-1059

IN RE STEREOTAXIS, INC.

_____

DECIDED: October 27, 2005

_____

Before RADER, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

FRIEDMAN, <u>Senior Circuit Judge</u>.

The appellant Stereotaxis, Inc. ("the Applicant") challenges the decision of the Trademark Trial and Appeal Boardof the United States Patent and Trademark Office ("Board") conditioning registration of the trademark "stereotaxis" and design for medical goods and services on disclaiming the word "stereotaxis" because, as thus used, it is merely descriptive. We affirm.

I

The Applicant makes and sells magnetic surgery equipment, including magnetic systems that create a navigating magnetic field in the body, and medical devices that respond to such fields. The Applicant sought to register the trademark shown below for twelve specified goods and services. The twelve goods and services included "Magnetic Navigation Systems for Medical Applications," "Magnetic Medical Devices," "Magnets and Electromagnets for Medical Applications," and "Medical Imaging Apparatus."



Stereotaxis, Inc.

The Trademark Examining Attorney concluded that under the Applicant's proposed uses of the mark, the word "stereotaxis" was merely descriptive and had to be disclaimed before the mark could be registered. She explained that "[a] disclaimer does not remove the disclaimed matter from the mark. It is simply a statement that the applicant does not claim exclusive rights in the disclaimed wording or design apart from the mark as shown in the drawing."

After the Patent and Trademark Office ("Trademark Office") continued the refusal to register, the Applicant appealed the disclaimer requirement to the Board, which affirmed. The Board stated that "[i]t is well settled that a term is considered to be merely descriptive of goods or services . . . if it forthwith conveys an immediate idea of any ingredient, quality, characteristic, feature, function, purpose or use of the goods or services." In re Stereotaxis, Inc., No. 7810867 (TTAB July 20, 2004) (slip op.). It noted "that registration must be denied if a term is merely descriptive of any of the goods or services for which registration is sought." It concluded that the term "stereotaxis" "immediately describes . . . significant information concerning the nature, purpose or function of at least some, if not most, of the applicant's goods," and therefore must be disclaimed.

II

The Applicant challenges the Board's disclaimer requirement on two grounds: (A) that the Board was required, but failed, to specify the particular products and

services that the term "stereotaxis" "merely described;" and (B) that there is not substantial evidence that "stereotaxis" is descriptive of any of those products and services.

A. The Director of the Trademark Office "may require the applicant to disclaim an unregistrable component of a mark otherwise registrable." 15 U.S.C. § 1056(a). A mark or component is unregistrable if, "when used on or in connection with the goods of the applicant," it is "merely descriptive . . . of them." 15 U.S.C. § 1052(e)(1). Our predecessor court, the Court of Customs and Patent Appeals, whose decisions bind us (South Corp. v. United States, 690 F.2d 1368, 1371 (Fed. Cir. 1982) (en banc)), has stated that "registration should be refused if the mark is descriptive of any of the goods for which registration is sought." Application of Richardson Ink Co., 511 F.2d 559, 561 (CCPA 1975). See In re Am. Soc'y Clinical Pathologists, Inc., 442 F.2d 1404, 1407 (CCPA 1971); Quik-Print Copy Shop, 616 F.2d 523, 525 (CCPA. 1980); 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 11.18 (2d ed. 1984).

Thus, the Trademark Office may require a disclaimer as a condition of registration if the mark is merely descriptive for at least one of the products or services involved. We know of no requirement in the trademark statutes or elsewhere that the Board must make the additional analysis the Applicant seeks in order to determine that a proposed mark is merely descriptive as applied to the Applicant's products and services. Here the Board "f[ou]nd" that

> when used in connection with applicant's goods, the term "STEREOTAXIS" immediately describes, without conjecture or speculation, significant information concerning the nature, purpose or function of at least some, if not most, of applicant's goods, namely, that they are stereotaxis medical or surgical devices.

<u>Stereotaxis</u>, No. 7810867.

If this finding is supported by substantial evidence – and as we now show, it is – it suffices to support the Board's determination that, as used with the Applicant's products and services, the term "stereotaxis" is merely descriptive, without the additional particularization that the Applicant would require.

B. "The Board's determination that a mark is merely descriptive is a factual finding, which this court upholds unless unsupported by substantial evidence." <u>In re MBNA Am. Bank N.A.</u>, 340 F.3d 1328, 1332 (Fed. Cir. 2003); <u>see</u> <u>In re Nett Designs</u>, 236 F.3d 1339, 1341 (Fed. Cir. 2001).

"Evidence [that a term is merely descriptive] may be obtained from any competent source, such as dictionaries, newspapers, or surveys." <u>In re Bed & Breakfast Registry</u>, 791 F.2d 157, 160 (Fed. Cir. 1985); <u>see</u> <u>In re Northland Aluminum Prods, Inc.</u>, 777 F.2d 1556, 1559 (Fed. Cir. 1985). Here, the evidence the Board relied on to show that "stereotaxis" is merely descriptive consisted of dictionary definitions and a press release by one of the Applicant's investors about the Applicant's products and services. <u>Stereotaxis</u>, No. 7810867, slip op. at 4-7.

One of these dictionary definitions, from the <u>Encarta World English Dictionary</u> (North American ed. 2004), described "stereotaxis" as a "technique in brain surgery: neurological surgery involving the insertion of delicate instruments that are guided to a specific area by the use of three-dimensional scanning techniques." (Encarta has changed the definition from "a specific area" to "the relevant area" since the Board's decision in July 2004. That change does not alter our analysis.) Another dictionary, <u>MedTerms.com Medical Dictionary</u> (2005), defines "stereotaxis" as the "[u]se of a

computer and scanning devices to create three-dimensional pictures." These definitions describe several of the uses the Applicant ascribed to its products and services in its trademark registration application, including "Magnetic Navigation Systems for Medical Applications," "Magnetic Medical Devices," "Magnets and Electromagnets for Medical Applications," and "Medical Imaging Apparatus."

The Applicant contends that the Board failed to consider dictionary definitions that are more "reflective of the purchasing public's understanding of the term." The Applicant argues that the Board erred by not limiting its definition of "stereotaxis" to products and services that utilize an external reference frame, a computer and a scanning device, which the Applicant's products do not use. An external reference frame is a system in which points outside the body are used in coordination to pinpoint a specific point inside the body. The Applicant, however, does not show that an external reference frame, a computer and a scanning device are essential elements, rather than simply a common methodology, of stereotaxis.

The issue before us is whether substantial evidence supports the Board's finding that, as applied to the Applicant's products and services, "stereotaxis" is merely descriptive, and not whether there is also evidence that would support another classification of that mark. See In re Nett Designs, 236 F.3d at 1341 ("Any competent source suffices to show the relevant purchasing public's understanding of a contested term or phrase."). To prevail in its claim, the Applicant must show that its proposed definition would be understood by the relevant public – here the medical profession – to be the only meaning of the term. See In re Abcor Dev. Corp., 588 F.2d 811, 813 (CCPA 1978) ("The major reasons for not protecting such [merely descriptive] marks are: (1) to

prevent the owner of a mark from inhibiting competition in the sale of particular goods; and (2) to maintain freedom of the public to use the language involved, thus avoiding the possibility of harassing infringement suits by the registrant against others who use the mark when advertising or describing their own products.").

The Applicant has not made that showing. Accordingly, the fact that the Applicant's products may use magnets and magnetic imagery rather than an external frame of reference and computer generated imagery is not enough to invalidate the finding that the Applicant's proposed use of the term "stereotaxis" is merely descriptive of its products and services.

The Board's finding that the Applicant's proposed use of the mark is merely descriptive is further supported by a press release by Advent International announcing that it had been a co-lender of a $25.5 million investment in the Applicant. The release stated: "Stereotaxis will use the new capital to expand the clinical development of its proprietary Magnetic Navigation System (MNS). The system is designed to integrate magnetics, computers and three-dimensional medical imaging to help clinicians navigate and control catheters and other surgical instruments throughout the body." Although, as the Applicant points out, the press release was neither made on behalf of the Applicant nor contemporaneous with the trademark application, the release nevertheless is relevant because it is evidence of the public's perception of the applicant's products and services. Whether a mark is merely descriptive or not is "determined from the viewpoint of the relevant purchasing public." Bed & Breakfast Registry, 791 F.2d at 160.

Substantial evidence supports the Board's finding that as applied to the Applicant's products and services, "stereotaxis" is merely descriptive.

CONCLUSION

The decision of the Trademark Trial and Appeal Board, affirming the disclaimer of the term "stereotaxis," is

<u>AFFIRMED</u>.