THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing:                                Mailed:
May 24, 2011                            November 22, 2011

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re theDot Communications Network LLC
_____

Serial No. 77622942
Serial No. 77622944
Serial No. 77622945
Serial No. 77622947
Serial No. 77622948
_____

Mike Rodenbaugh of Rodenbaugh Law for theDot Communications Network LLC.

Seth A. Rappaport, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).
_____

Before Grendel, Holtzman and Bergsman,
Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

theDot Communications Network LLC ("applicant") filed five intent-to-use applications on the Principal Register for the mark **.music**, in standard character form, for the following services:

1. Serial No. 77622942

   On-line social networking services; providing a social networking website for entertainment purposes; registration of domain names for

identification of users on a global computer network, in Class 45.

2. Serial No. 77622944

Computer services, namely, creating an on-line community for registered users to participate in competitions, showcase their skills, get feedback from their peers, form virtual communities, engage in social networking and improve their talent; computer services, namely, hosting on-line web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; computer services, namely, interactive hosting services which allow the user to publish and share their own content and images on-line; providing a web site featuring temporary use of non-downloadable software allowing web site users to upload, post and display online videos for sharing with others for entertainment purposes; providing a web site that gives multiple computer users simultaneously the ability to upload, create and edit documents, printed publications, online publications, photographs, product packaging and advertisements; providing an online website for creating and hosting micro websites for businesses, in Class 42.

3. Serial No. 77622945

Digital video, audio, and multimedia publishing services; multimedia entertainment services in the nature of recording, production and post-production services in the fields of video and films; multimedia publishing of books, magazines, journals, software, games and electronic publications; post-production editing services in the field of videos and

Serial Nos. 77622942 *et.al.*

> films; publishing of electronic publications; publishing of reviews; publishing of web magazines, in Class 41.

4. Serial No. 77622947

> Arranging subscriptions of the online publications of others; on-line wholesale and retail store services featuring downloadable sound, image, video and game files; promotional services, namely, promoting the goods of others by means of providing online gift cards; providing a searchable online advertising guide featuring the goods and services of other on-line vendors on the internet; Providing an online video business directory; publishing of advertising texts, in Class 35.

5. Serial No. 77622948

> Downloadable MP3 files, MP3 recordings, on-line discussion boards, webcasts and podcasts featuring audio books and news broadcasts; sound recordings featuring entertainment in the nature of performing arts; video recordings featuring entertainment in the nature of performing arts, in Class 9.

In each application, the Trademark Examining Attorney refused to register applicant's mark under Section 2(e)(1) of the Trademark Act of 1946, 15 U.S.C. §1052(e)(1), on the ground that applicant's mark is merely descriptive of the identified goods and services. According to the Examining Attorney, the mark is merely descriptive for the following reasons:

Serial Nos. 77622942 *et.al.*

1.  "[T]he term MUSIC is defined as 'the art of arranging sounds in time so as to produce a continuous, unified, and evocative composition, as through melody, harmony, rhythm, and timbre'"; and

2.  Music is a feature of applicant's goods and services in that the goods and services are broad enough to include music, music related content and information about music.[1]

The Examining Attorney dismissed the period at the beginning of the mark as mere punctuation that does not alter the commercial impression of the mark as being something more than just the word "Music."[2]

In response, applicant argues that the ".MUSIC mark is completely arbitrary in relation to most of the services cited in this application … and has no inherent relation whatsoever to domain registration or social networking services" and that there is no authority for the examining attorney's assertion that because applicant's services may encompass music, the **.music** mark is merely descriptive.[3] Applicant also makes the following argument:

> The name of a Top-Level Domain <u>can</u> and
> in fact <u>does</u> have an important source
> identifying function.  By definition,

---

[1] Examining Attorney's Briefs, unnumbered pages 5-8.
[2] Examining Attorney's Briefs, unnumbered page 9.
[3] Applicant's Brief, p. 6.

domain names in any particular TLD emanate from only one domain registry source.[4] (Emphasis in the original).

* * *

Applicant's .MUSIC mark incorporates two elements to suggest internet services which might have applications related to music, in addition to other performing arts, entertainment, news and many other services. Both the "dot" and the word "music" have several apposite meanings, and combine to form a unitary mark that does not "merely describe" any of Applicant's services. Applicant intends to offer a wide variety of services listed in the applications, of which domain registration is only one facet.[5]

Certainly consumers will understand that the mark means more than "merely a TLD" because many existing TLD operators provide a variety of value-add [sic] services under the TLD names/marks, other than domain registration.[6]

Finally, applicant argues that it has been the practice of the USPTO to allow the registration of top-level domains.[7]

[T]here are many TLD operators that use the TLD name string as a mark, and that have already registered those TLD names on the Principal Register, including ICANN-accredited TLDs such as dotam, dotfm, .travel, .nu domain, and dotCoop. There are even more non-accredited, yet publicly proposed

---

[4] Applicant's Brief, p. 8.
[5] Applicant's Brief, pp. 9-10.
[6] Applicant's Brief, p. 10.
[7] Applicant's Brief, p. 12.

Serial Nos. 77622942 *et.al.*

> and/or operated TLD strings such as
> .learn, dotRadio, dotGreen, dotblog or
> .music, that use their mark as a source
> identifier. … All of these include
> domain registration services, and may
> include a much broader variety of
> online services.[8]

A term is merely descriptive if it immediately conveys knowledge of a significant quality, characteristic, function, feature or purpose of the products and services it identifies. *In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009, 1009 (Fed. Cir. 1987). Whether a particular term is merely descriptive is determined in relation to the goods and services for which registration is sought and the context in which the term is used, not in the abstract or on the basis of guesswork. *In re Abcor Development Corp.,* 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978); *In re Remacle,* 66 USPQ2d 1222, 1224 (TTAB 2002). In other words, the question is not whether someone presented only with the mark could guess the products listed in the description of goods. Rather, the question is whether someone who knows what the products are will understand the mark to convey information about them. *In re Tower Tech, Inc.,* 64 USPQ2d 1314, 1316-1317 (TTAB 2002); *In re Patent & Trademark Services Inc.,* 49 USPQ2d 1537, 1539 (TTAB 1998); *In re Home Builders Association of Greenville,*

---

[8] Applicant's Brief, pp. 10-11.

Serial Nos. 77622942 *et.al.*

18 USPQ2d 1313, 1317 (TTAB 1990); *In re American Greetings Corp.,* 226 USPQ 365, 366 (TTAB 1985).

If one must exercise mature thought or follow a multi-stage reasoning process in order to determine what product or service characteristics the term indicates, the term is suggestive rather than merely descriptive. *In re Tennis in the Round, Inc.,* 199 USPQ 496, 497 (TTAB 1978); *see also, In re Shutts,* 217 USPQ 363, 364-365 (TTAB 1983); *In re Universal Water Systems, Inc.,* 209 USPQ 165, 166 (TTAB 1980).

Finally, the question of whether a mark is merely descriptive must be determined based on the evidence of record at the time registration is sought. *In re Sun Microsystems Inc.*, 59 USPQ2d 1084, 1088 (TTAB 2001). *See also In re Thomas Nelson Inc.,* 97 USPQ2d 1712, 1717 (TTAB 2011). In the applications at issue, this last principle is particularly important, as the evidence and arguments involve consideration of the question of consumer perception of domain names and internet addresses, a field which the record shows to be changing.

Top-level domain names (TLDs) for websites in the United States include .com (commercial organizations), .edu (educational bodies), .gov (government bodies), .net (network resources), .mil (military) and .org (non-profit

7

organizations).[9]  These top-level domain names are referred

to as "dot com," "dot edu," etc.[10]  In 2000, the Internet

Corporation for Assigned Names and Numbers (ICANN)

announced the new domains set forth below (except for

.mobi, which was announced in 2005).  Prior to 2000, new

domains had not been created since 1989.[11]

| TLD | Purpose |
|---|---|
| **.aero** | aerospace |
| **.asia** | asia |
| **.biz** | business |
| **.cat** | Catalan region |
| **.coop** | cooperatives |
| **.info** | information service |
| **.jobs** | employment |
| **.mobi** | mobile phones, etc. |
| **.museum** | museum |
| **.name** | an individual |
| **.pro** | licensed professionals |
| **.tel** | contacts |
| **.travel** | travel |

In 2010, after years of legal controversy, ICANN

approved the **.xxx** top-level domain for adult entertainment

---

[9] Internet & Networking Dictionary, p. 258 (Microsoft 2003).  *See also* NetLingo:  The Internet Dictionary, pp. 139 and 383 (2003); Official Internet Dictionary p. 46 (1998); Net.Speak:  The Internet Dictionary, p. 55 (1994). The Board may take judicial notice of dictionary evidence.  *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co.,* 213 USPQ 594, 596 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

[10] The Internet Glossary and Quick Reference Guide, p. 130 (1998) ("dot com" "[r]efers to a commercial Internet address, which ends with a period and the word **com** (.com).  For example, the Internet addresses for the CompuServe and America Online services are **compuserve.com** and **aol.com**.") (emphasis in the original).  *See also* NetLingo:  The Internet Dictionary, p. 141.

[11] Computer Desktop Encyclopedia (2011); NetLingo:  The Internet Dictionary, p. 139; Encyclopedia Britannica (2011).

sites.  ICANN then announced in 2011 that it would greatly increase the number of top-level domain**s** by allowing nearly any new name in any language.[12]

Applicant submitted an excerpt from a website in 2009 discussing the proposed expansion of top-level domain names to "dedicated communities" by ICANN.[13]

> Q.   What is the level of interest at the moment?
>
> A.   A lot of what we know is anecdotal.  We estimate that there'll be hundreds of applications, although there may actually be more or there may be less.  Some people have specifically declared their interest:  chef Wolfgang Puck said that he wants .food, and there has been interest from cities such as Berlin and New York.  These are some examples, then, and we can expect more to follow; the most exciting ideas are when you hear about communities, be they linguistic or cultural, using the web as a place for identity.

ICANN has, in fact, expanded its practice of issuing top-level domain names.  In the .aero website (*information.aero*) submitted by applicant, the .aero domain owner explained that ".aero is the aviation's own Internet space offering an established alternative to the

---

[12] Encyclopedia Britannica (2011).

[13] "Q&A:  Icann [sic] chief operating officer Doug Brent" at *V3.co.uk* (August 18, 2009) attached as Exhibit I to applicant's August 26, 2009 response.  Although this is a website from the United Kingdom, we have considered it for the information regarding the issuance of new top-level domain names, not for consumer perceptions.

Serial Nos. 77622942 *et.al.*

traditional TLDs – with the bonus that it is managed by aviation for aviation."[14]  The .aero domain owner offered the following information:

> Technically, in the daily operations of the domain, there is no distinction between .aero and generic TLDs such as .com, .org, and country specific TLDs.

Canon, Inc. issued a press release dated March 16, 2010, announcing that it would seek the acquisition of the ".canon" top-level domain name.[15]  Canon, Inc. explained that "[t]he new gTLD system [expected to commence in 2010] is expected to allow a company name, brand name, geographic region, or service type to be used as gTLD within website and e-mail addresses."[16]

> With the adoption of the new gTLD system, which enables the direct utilization of the Canon brand, Canon hopes to globally integrate open communication policies that are intuitive and easier to remember compared with existing domain names such as "canon.com."  Canon has made the official decision to begin necessary procedures to acquire ".canon" upon the introduction of the new system.  Following approval for the new gTLD system, which is expected to take place after the later half of 2011, Canon will make full use of the new domain name to increase the convenience and effectiveness of its online communications.

---

[14] August 26, 2009 response, Exhibit E.
[15] September 15, 2010 response, Exhibit C.
[16] A "gTLD" is a generic top-level domain and it is synonymous with a top-level domain.  (NetLingo.com)

Serial Nos. 77622942 *et.al.*

There are other groups seeking top-level domains, such as a group seeking authorization for *.music*.  The group seeking ICANN authorization for *.music* is not affiliated with applicant.  The Examining Attorney submitted an excerpt from the *Music.us* website promoting the future ".MUSIC Domain Name Extension."[17]

> .music is the web extension representing the global music community, giving music entities a unique identity online.  Not only does it increase a brand's visibility on the net, .music removes second-guessing & confusion by immediately associating a brand's line of business with a memorable identity:  *music.*

One of the benefits touted for the .music top-level domain name is "dedicated domain branding vs. subdomains, e.g., Nokia.music > music.nokia.com."

In the blog *Indie Music Tech* (*indiemusictech.com*) (February 1, 2010), the author posted the following entry:[18]

> Dot Music:  A Domain Name Extension for the Music Industry
>
> While attending MIDEM last week, I met Constantine Roussos, founder of the

---

[17] February 26, 2009 Office Action.  The copyright for the website is owned by ".music Generic Top-Level Domain TLD gTLD Extension/A Music.us Company."  This organization is not associated with applicant.  (Steven Baldridge Dec. ¶ 1 attached to the August 26, 2009 Office Action) ("Applicant is entirely unrelated to the 'Internet evidence' relied upon by the Examining Attorney, and had nothing whatsoever to do with the creation of the music.us website or their apparent 'dotMusic" initiative.").

[18] March 15, 2010 Office Action.

11

Serial Nos. 77622942 *et.al.*

> ".music" top level domain name
> initiative.  Essentially, he's
> attempting to generate enough public
> support to successfully petition ICANN
> to add .music to the existing list of
> Generic Top Level Domain extensions,
> such as .com, .net, .org, etc.
> Constantine has already received over 1
> million signatures supporting the
> .music extension, but it has not yet
> been approved, even though extensions
> like .biz, .jobs, .mobi, .museum,
> .name, .travel and others already
> exist. … I would certainly use .music
> to augment my current registrations
> (e.g., BandMetrics.music,
> MusicScout.music).

An article appearing in the *ComputerUser.com* website

(February 3, 2010) also reported on the status of the

.music domain name extension.[19]

> .Music (DOT MUSIC) Surpasses 2 Million
> Supporters for the .music Domain Name
> Extension, Sponsors Social Media Week
> in New York
>
> The .music (DOT MUSIC) domain name
> initiative surpasses 2 million
> supporters to launch the .music domain
> name extension for the global music
> community and industry.  The .music
> registry sponsors Social Media Week in
> New York and discusses the future of
> .music branding and .music marketing on
> the web.
>
>                    *    *    *
>
> "The .music domain name extension is
> about giving the global music community
> a unique identity and a highly visible
> home on the web that represents their

---

[19] *Id.*

12

> brand name, their music and music-
> related products and services," says
> Constantine Roussos, founder and CEO of
> .music. "The .music domain extension
> presents a compelling opportunity for
> artists and bands to monetize and
> protect their music, gain exposure, and
> participate in a global, collective
> movement to connect. Music is truly
> the universal, unifying language."
>
> *     *     *
>
> The .music (DOT MUSIC) registry
> (www.music.us), with offices in Los
> Angeles, New York, and Cyprus, Europe,
> was conceived in 2005. Its purpose is
> for ICANN delegation management of the
> .music Top-Level Domain (TLD), giving
> bands, artists, organizations and music
> industry professionals a unique
> identity and highly visible top-level
> domain on the web. The .music TLD
> utilizes a secure Domain Name System
> (DNS) platform and marketplace solution
> to enable artists and industry
> professionals to maximize the earning
> potential of their creative works and
> music-related products/services,
> connect directly with their fans, and
> increase their networking opportunities
> and global exposure.

These excerpts contribute to the likely public perception of *.music* as a top-level domain associated with the field of music because there has been a concerted public effort to build support for its use as a top-level domain in this field ("The .music (DOT MUSIC) domain name initiative surpasses 2 million supporters to launch the

13

.music domain name extension for the global music community and industry").[20]

In view of the foregoing, we find that applicant's proposed mark **.music** conveys the commercial impression of a top-level domain name similar to .com, .net, etc., and not merely the word "Music" featuring nondistinctive punctuation.  Moreover, consumers would understand it to be a top-level domain in the field of music.  This finding is based on the current marketing environment which is different than the marketing environment when many of the third-party registrations relied upon by applicant were issued.  When many of the third-party registrations were issued, ICANN was not considering expansion of the roster of domain name extensions.[21]  Nor does the record reveal active campaigns to obtain TLD status for the marks in those registrations as there is for the .music top-level domain.  Therefore, the third-party registrations submitted by applicant for marks consisting of "dot _____" or "._____" have very limited probative value, especially if those registrations were not supported by evidence of

---

[20] March 15, 2009 Office Action.
[21] To the extent that the applications for the third-party registrations were filed after ICANN began considering domain name extensions, because the files of those applications were not made of record, we do not know whether the descriptiveness issue was considered.

Serial Nos. 77622942 *et.al.*

actual use in this record.[22]  Third-party registrations are not conclusive on the question of descriptiveness.  Each case must stand on its own merits, and a mark that is merely descriptive should not be registered on the Principal Register simply because other such marks appear on the register.  *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001); *In re Scholastic Testing Service, Inc.*, 196 USPQ 517, 519 (TTAB 1977).

Having determined that **.music** engenders the commercial impression of a top-level domain in the field of music, we now analyze whether someone who knows the goods or services listed in the applications will understand the mark to directly convey information about them.

A.    Serial No. 77622942

As indicated above, applicant is seeking to register **.music** for the following services:

> On-line social networking services;
> providing a social networking website
> for entertainment purposes;
> registration of domain names for
> identification of users on a global
> computer network, in Class 45.

---

[22] Our finding that .music engenders the commercial impression of a top-level domain name is limited to the facts in this case. For example, as indicated above, Canon, Inc. has announced that it is seeking a top-level domain for *.canon* which, depending on the record developed in a trademark application, may or may not engender the commercial impression of a top-level domain name.

Serial Nos. 77622942 *et.al.*

The evidence shows that the owners of top-level domains register domain names. Moreover, applicant concedes that the owners of top-level domains register domain names ("consumers will understand the mark means more than 'merely a TLD' because many TLD operators provide a variety of value-add [sic] services under their TLD names/marks, other than domain registration").[23] In addition, top-level domains often describe the subject matter or user of the domain space. For example:

1.    The respective owners of the .mobi, .aero, and .coop top-level domains promote themselves as more than just registrars of domain names targeted to particular industries or types of entities.[24] The owner of the .coop top-level domain has registered the mark .coop and design for "maintaining a registry of computer addresses" and was required to disclaim the exclusive right to use the term "coop" because presumably it described attributes, features, and characteristics of the services.

2.    Registration No. 2746004 is for the mark .BIZ and design for*, inter alia,* maintaining a registry of

---

[23] Applicant's Brief, p. 10.
[24] *Id.* at Exhibit E.

16

Serial Nos. 77622942 *et.al.*

computer network addresses.   The registrant was required to disclaim the exclusive right to use the term ".BIZ"[25] because it indicated an aspect of the services.

3.   Registration No. 3044328 is for the mark .org and design for the following services:

> Domain name registry services, namely, coordinating the registration of domain names for identification of users and internet protocol addresses on the Internet; providing an online computer database in the field of domain name registration information, and domain name monitoring services.

The registrant was required to disclaim the exclusive right to use the term ".org" because it merely denotes the top-level domain for noncommercial organizations and is incapable of functioning as a source identifier.[26]

Because **.music** engenders the commercial impression of a top-level domain name and top-level domain name owners register domain names, consumers would anticipate that **.music** identifies the registration of domain names for a music-related top-level domain.   Accordingly, we find that the term **.music** is merely descriptive for the "registration of domain names for identification of users on a global computer network."

---

[25] *Id.* at Exhibit H.
[26] *Id.*

17

Serial Nos. 77622942 *et.al.*

Even though the services listed in the application encompass more than domain name registration (e.g., applicant's social networking website for entertainment purposes could encompass a social networking website related to music), registration will be denied if a mark is merely descriptive of *any* of the services for which registration is sought. *In re Quik-Print Copy Shop, Inc.,* 616 F.2d 523, 205 USPQ 505, 507 (CCPA 1980). *See also in re Stereotaxis Inc.,* 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005).

B.  Serial No. 77622944

In this application, applicant is seeking to register **.music** for, *inter alia,* creating an on-line community for registered users, hosting on-line web facilities for others, and providing an online website for creating and hosting micro websites for businesses. According to the evidence of record, one of the purposes for creating top-level domain extensions is to create an on-line community for registered users or domain name registrants, to host the websites of registered users, and to create websites in that domain. *See* "Q&A: Icann [sic] chief operating officer Doug Brent" at *V3.co.uk* (August 18, 2009);[27] the

---

[27] August 26, 2009 Response, Exhibit I.

Serial Nos. 77622942 *et.al.*

excerpt from the .aero website (information.aero) and the Canon, Inc. press release;[28] the music.us website;[29] and Registration Nos. 3617901 and 3617902 for the mark .tel and design for, *inter alia,* for "hosting the websites for others."[30]  Accordingly, the mark **.music** directly conveys to relevant consumers that the services include hosting websites and creating online communities and that these services could encompass websites and communities in the field of music.  Therefore, the mark is merely descriptive for those services.

C.   Serial No. 77622945

In this application, applicant is seeking to register its mark for the following services:

> Digital video, audio, and multimedia publishing services; multimedia entertainment services in the nature of recording, production and post-production services in the fields of video and films; multimedia publishing of books, magazines, journals, software, games and electronic publications; post-production editing services in the field of videos and films; publishing of electronic publications; publishing of reviews; publishing of web magazines

---

[28]  *Id.* at Exhibit E.
[29]  February 26, 2009 Office Action.
[30]  *Id. at Exhibit H.*

19

Serial Nos. 77622942 *et.al.*

As indicated by the evidence noted above, the new TLD extensions provide domains for dedicated communities of like-minded registered users, domain name registrants and Internet users.  In this regard, the article appearing in the *ComputerUser.com* website (February 3, 2010), noted above, quoted the principal of the organization seeking authorization for .*music* as a top-level domain as saying, "The .music domain name extension is about giving the global music community a unique identity and a highly visible home on the web that represents their brand name, their music and music-related products and services." Accordingly, **.music** for publishing of electronic publications and publishing of web magazines would immediately convey that the electronic publications/web magazines would be about music.  Therefore, **.music** is merely descriptive when used in connection with music publishing and entertainment services.

D.    Serial No. 77622947

In this application, applicant is seeking to register **.music** for*, inter alia,* providing a searchable online advertising guide featuring the goods and services of other on-line vendors on the internet and providing an online video business directory.  The record shows that other domain name registrars maintain directories of members of

20

Serial Nos. 77622942 *et.al.*

associated companies. *See the* excerpt about the .aero top-level domain (information.aero), the .coop (na.domains.coop) top-level domain;[31] and Registration No. 2746004 for the mark .BIZ and design for, *inter alia,* "providing interactive online directories for locating network addresses."[32] Consumers would expect these services to be rendered by the owner of the **.music** registry and that the services include guides and directories featuring vendors, goods, and services related to music. Accordingly, **.music** directly conveys to relevant consumers that the applicant provides a searchable online advertising guide featuring the goods and services offered by its members in the field of music and, therefore, **.music** is merely descriptive for those services.

E.    Serial No. 77622948

In this application, applicant is seeking to register **.music** for the following goods:

> Downloadable MP3 files, MP3 recordings, on-line discussion boards, webcasts and podcasts featuring audio books and news broadcasts; sound recordings featuring entertainment in the nature of performing arts; video recordings featuring entertainment in the nature of performing arts.

---

[31] August 26, 2009 response at Exhibit E.
[32] *Id.* at Exhibit H.

Serial Nos. 77622942 *et.al.*

Because the purpose for creating top-level domain extensions such as **.music** is to create an on-line community for registered users or domain name registrants with common interests, the term **.music** in connection with downloadable content or sound recordings directly conveys to the relevant consumers the content of the downloadable files and sound recordings. As noted above, the article appearing in the *ComputerUser.com* website (February 3, 2010), quoted the principal of the proposed top-level domain *.music* as saying, "The .music domain name extension is about giving the global music community a unique identity and a highly visible home on the web that represents their brand name, their music and music-related products and services." Consumers would expect that downloadable MP3 files, etc., identified by the **.music** would include music files. Accordingly, the term **.music** is merely descriptive for these goods.

Decision: The refusals to register Serial No. 77622942, Serial No. 77622944, Serial No. 77622945, Serial No. 77622947 and Serial No. 77622948 are affirmed.