This Opinion is a
Precedent of the TTAB

Mailed: April 29, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Dolce Vita Footwear, Inc.*

_____

Serial No. 88554717

_____

Susan A. Smith of Ballard Spahr LLP,
    for Dolce Vita Footwear, Inc.

Alison F. Pollack, Trademark Examining Attorney, Law Office 106,
    Mary I. Sparrow, Managing Attorney.

_____

Before Taylor, Adlin and Larkin,
    Administrative Trademark Judges.

Opinion by Taylor, Administrative Trademark Judge:

Dolce Vita Footwear, Inc. ("Applicant") seeks registration on the Principal

Register of the proposed mark CLEAR (in standard characters) for, as amended,

> Footwear, lingerie, sleepwear, swimwear, and women's
> clothing, namely, shirts, dresses, skirts, blouses; all of the
> foregoing excluding transparent goods

in International Class 25.[1]

---

[1] Application Serial No. 88554717 was filed on July 31, 2019, based upon Applicant's allegation of a bona fide intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

The Trademark Examining Attorney finally refused registration of Applicant's mark on the grounds that it is deceptively misdescriptive or, in the alternative, merely descriptive, of Applicant's identified goods, both under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1). We affirm the refusal to register on the ground that Applicant's mark is deceptively misdescriptive; the alternative ground for refusal that the mark is merely descriptive is moot.

## I.   Procedural Background

We first review the application prosecution history to clarify how the alternative refusals were issued. As filed, the application identified the goods as "Footwear; Lingerie; Sleepwear; Swimwear; Women's clothing, namely, shirts, dresses, skirts, blouses." The Examining Attorney initially refused registration on the ground that the proposed mark is merely descriptive of the identified goods, relying in part on the definition of "clear" as "[e]asily seen through; transparent,"[2] and arguing that the word "clear" is commonly used to describe a feature of footwear and that consumers will immediately understand from Applicant's proposed mark that Applicant provides clear footwear.

---

[2] October 28, 2019 Office Action; TSDR 5. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (https://www.ahdictionary.com/word/search.html?q=clear).

Citations to the examination record refer to the USPTO's online Trademark Status and Document Retrieval system (TSDR) by page number in the downloadable .pdf versions of the documents.

Citations to TTABVUE throughout the decision are to the Board's public online database that contains the appeal file, available on the USPTO website, www.USPTO.gov. The first number represents the docket number in the TTABVUE electronic case file and the second represents the page number(s), if applicable.

Traversing the refusal, Applicant explained that there are no transparent items in its CLEAR collection, and made of record materials showing items in that collection, including the following photograph taken at an "August 16, 2019 shoe show in NYC":[3]



Applicant, generally referencing an October 28, 2019 telephone conference with the Examining Attorney, also addressed the yet-to-be-raised issue of deceptive misdescriptiveness,[4] arguing that its use of CLEAR is completely arbitrary, and that no consumer could be fooled into thinking Applicant's footwear is transparent because the consumer must see the goods when purchasing them and will see that they are not transparent.

---

[3] November 14, 2019 Response; TSDR 10-11, 13.

[4] Applicant particularly noted in its response that when its counsel advised the Examining Attorney that its products are not transparent, the Examining Attorney responded that if the mark is not descriptive, then it is deceptively misdescriptive. *Id*. at TSDR 7.

In the November 22, 2019 Office Action, the Examining Attorney maintained the mere descriptiveness refusal and, based on Applicant's admission that its footwear is not transparent, alternatively refused registration on the ground that the proposed mark is deceptively misdescriptive of the goods.

Applicant responded to the November 22, 2019 Office Action with arguments against the refusals, and proposed an amendment to the identification of goods that would limit the identified footwear portion of the identification to "footwear, excluding transparent footwear."

The Examining Attorney then issued a Final Office Action on February 10, 2020, maintaining both Section 2(e)(1) refusals as to all identified goods.[5]

Prior to the deadline for filing a notice of appeal, on June 11, 2020, Applicant requested reconsideration of the final refusals, seeking to further amend its identified goods to exclude from all of the identified items "transparent goods,"[6] and with

---

[5] The Final Office Action did not directly address Applicant's proposed amendment to the identification, but in discussing the goods in her brief, the Examining Attorney refers to the originally identified "footwear" as "footwear, excluding transparent footwear." We therefore consider the amendment to have been accepted. We would be remiss if we failed to point out that when a proposed amendment is acceptable to the Examining Attorney, the next Office Action should so state, leaving no room for doubt going forward or in the case of an appeal.

[6] Applicant asserts in its Request for Reconsideration that the Examining Attorney untimely submitted new arguments and evidence in her Final Office Action and should have instead issued a non-final Office action. A review of the action shows that no new issues were raised and the refusals were confined to the previously stated merely descriptive and deceptively misdescriptive refusals. *See In re Adlon Brand GmbH*, 120 USPQ2d 1717, 1725 (TTAB 2016) ("Neither Applicant's new evidence and arguments regarding the outstanding refusal under Section 2(e)(4), submitted with its request for reconsideration, nor the Examining Attorney's submission of additional evidence regarding the same refusal, provided in response to that request, raised a new issue such as to make appropriate a nonfinal Office Action ….") (citations omitted). The Examining Attorney's inclusion of supplementary evidence directed to clothing items in support of previously issued refusals was not inappropriate. Applicant

additional arguments against the refusals. The Examining Attorney denied the Request for Reconsideration and apparently accepted the further amendment to the exclusionary language to the identification of goods.[7] Applicant then timely filed this appeal, which is fully briefed.

## II.  Whether CLEAR is Deceptively Misdescriptive of Applicant's Goods

Because of the amendment to exclude transparent footwear from the application, we start with the deceptive misdescriptiveness refusal.

### A.  The Examining Attorney's Arguments and Evidence

The Examining Attorney maintains that Applicant's proposed mark is deceptively misdescriptive of the identified goods. The Examining Attorney particularly argues: (1) the evidence shows that the proposed CLEAR mark means "easily seen through; transparent" which is merely descriptive of Applicant's goods in that the public will

---

could have addressed the Examining Attorney's additional evidence in its Request for Reconsideration, but did not do so.

In addition, Applicant, at footnote 5 of its brief, points to a related application for the mark CLEAR BY DOLCE VITA (Serial No. 88554548), noting that "the Examining Attorney *agreed* that CLEAR is not Descriptive for 'non-transparent clothing.'"(Emphasis supplied). The action of the Examining Attorney in the related case has no effect on the disposition of this appeal which involves a different mark. Nevertheless, the prior decisions and actions of other trademark examining attorneys in registering other marks are not binding upon the USPTO or the Board. *See In re USA Warriors Ice Hockey Program, Inc.*, 122 USPQ2d 1790, 1793 n.10 (TTAB 2017). Each case is decided on its own facts, and each mark stands on its own merits. *Id.*

[7] We presume so because the amendment was neither rejected nor was any ground raised for rejection. Although not addressed in the denial of the request for reconsideration, the proceeding records have been updated and the subsequently-filed appeal briefs refer to further amended goods. This decision refers to the goods as so amended. In addition, in this case, the Examining Attorney's failure to expressly accept Applicant's second proposed amendment restricting all the identified goods to non-transparent items may have led to the maintenance of the merely descriptive refusal, which, after that amendment, should have been withdrawn when the Examining Attorney ruled on the request for reconsideration.

believe that Applicant provides transparent footwear and clothing; (2) it is plausible that Applicant's footwear and clothing could possess such a feature because the evidence shows that clear footwear and clothing, such as lingerie and dresses are common[8]; and (3) a reasonably prudent purchaser is likely to believe the representation (implied by the word "clear") because consumers commonly encounter footwear and clothing that are clear or transparent, even though Applicant's identification of goods, as amended, specifically excludes transparent goods.[9]

In addition to the noted definition of the word "clear," to show that CLEAR describes a feature or characteristic that footwear plausibly possesses, the Examining Attorney submitted screenshots from Applicant's website, as well from the websites of third parties Steve Madden and Nordstrom,[10] Zappos, PrettyLittleThing, boohoo, and U.S. Shein,[11] and Asos,[12] all showing descriptive use of the word "clear" by competitors in connection with features and characteristics of footwear, such as transparent straps and heels. Excerpts from the screen captures are shown below (emphasis added):

---

[8] In this case, all of the identified goods are in the same class. If an applicant's mark is merely descriptive or deceptively misdescriptive for any of the listed goods in a single class in the application it cannot be registered in that class. "A descriptiveness [or misdescriptiveness] refusal is proper 'if the mark is descriptive [or misdescriptive] of any of the [goods or] services for which registration is sought.'" *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Stereotaxis Inc.*, 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005)).

[9] Examining Attorney's brief. 8 TTABVUE 5-8.

[10] October 28, 2019 Office Action; TSDR 8-17.

[11] November 22, 2019 Office Action; TSDR 5-9 and 24-37.

[12] February 10, 2020 Final Office Action; TSDR 27.







The Examining Attorney also made of record a copy of an article from FN (http://footwearnews.com) titled "8 Clear Shoes to Prepare for Spring's Transparent Takeover," which discusses "[c]lear shoes" from eight footwear brands, including pictures of the shoes showing the "clear" features[13] and an article from GLOWSLY titled "19 Best Transparent Clear Shoes to Channel Cinderella: PVC Shoe Trend."[14] The article discusses trends in clear shoes, provides links to 19 different styles and, in part, states:

> **Clear shoes were one of the big breakout trends on the spring/summer runways**. We saw gorgeous transparent shoes on the catwalks of Chanel, Balmain, Yeezy, Prada and more. If you follow all the Instagram celebs, then you've probably been salivating over a

---

[13] November 22, 2019 Office Action; TSDR 10-23.

[14] February 10, 2020 Final Office Action; TSDR 30-46 (emphasis added).

particular pair of transparent Perspex shoes since last spring!

…

Get into the how's and what's of transparent shoes, with our brief history of the trend. We've also got styling suggestions for clear heels, so you can make the style work for every occasion.

With regard to use of the word "clear" for clothing, the Examining Attorney made of record website screenshots showing the word "clear" used by third-parties, *i.e.*, Amazon Fashion, PrettyLittleThing, Clear About This, and Doll's Kill, to describe features or characteristics of lingerie, skirts and dresses.[15] Excerpts from these screenshots include, by way of example, the following:

- Amazon Fashion



---

[15] *Id.* at TSDR 6-26.

- PrettyLittleThing



- Clear About This



B.     Applicable Law/Analysis

A mark is considered deceptively misdescriptive if: (1) the mark misdescribes a quality, feature, function, or characteristic of the goods or services with which it is used; and (2) consumers would be likely to believe the misrepresentation. *See In re Budge Mfg. Co.,* 857 F.2d 773, 8 USPQ2d 1259, 1260 (Fed. Cir. 1988); *In re White Jasmine LLC*, 106 USPQ2d 1385, 1394 (TTAB 2013) (citing *In re Quady Winery, Inc.*, 221 USPQ 1213, 1214 (TTAB 1984)).

As to the first part of the test, a mark is misdescriptive when it is "merely descriptive, rather than suggestive, of a significant aspect of the goods or services which the goods or services plausibly possess but in fact do not." *In re Hinton*, 116 USPQ2d 1051, 1052 (TTAB 2015) (citing *In re Shniberg*, 79 USPQ2d 1309, 1312 (TTAB 2006); *In re Phillips-Van Heusen*, 63 USPQ2d 1047, 1048 (TTAB 2005)). As to the second part, the reasonably prudent consumer test is applied in assessing whether consumers are likely to believe the misrepresentation. *In re Hinton*, 116 USPQ2d at 1052 (citing *R. J. Reynolds Tobacco Co. v. Brown & Williamson Tobacco Corp.*, 226 USPQ 169, 179 (TTAB 1985)).

The dictionary definition and third-party website evidence made of record by the Examining Attorney convince us that consumers will perceive CLEAR as describing a feature that footwear, lingerie, skirts and dresses could plausibly have, namely that such goods are transparent, "clear," or include transparent or "clear" accents or elements. Indeed, Applicant stated in its brief:

> For purposes of appeal, Applicant will not dispute the
> Examining Attorney's assertion that CLEAR means

> "transparent" when applied to footwear. … Given that, it thus follows that if a party tried to register CLEAR broadly for <u>all</u> forms of footwear, the mark would be descriptive because it would describe a feature or characteristic of at least *one form* of footwear (namely, "transparent footwear") *within* the broader definition.

Applicant's brief pp. 4-5. (Emphasis supplied and internal citations omitted.)[16] And, the record shows that at one time Applicant offered a shoe that it described as having "clear accents."[17] Applicant adds, however, that it "is not seeking to register CLEAR for both 'transparent *and* non-transparent footwear;' it is only seeking to register it for <u>non</u>-transparent footwear." *Id*. at p. 5. (emphasis supplied).[18] Based on the evidence of record, we have no doubt that consumers will immediately perceive the word "clear" as describing a feature or attribute that Applicant's footwear and clothing could plausibly have. We therefore find that Applicant's restriction of its identification of goods to non-transparent or non-clear goods is sufficient to show (and in fact conclusively establishes) that the proposed CLEAR mark misdescribes a feature or attribute of the goods in that Applicant's identified footwear and clothing items do not possess the characteristic of being "clear." *See generally* Trademark Manual of Examining Procedure § 1209.04 (2018), and the authorities cited therein. Thus, the first part of the test for deceptive misdescriptiveness has been satisfied.

---

[16] 6 TTABVUE 5-6.

[17] October 28, 2019 Office Action; TSDR 8.

[18] 6 TTABVUE 6.

Applicant's contention that its proposed mark CLEAR does not describe a plausible feature of its goods because it has restricted its identification so that the recited goods do not include transparent footwear and clothing is unavailing. We cannot assume that consumers of Applicant's goods will be aware that its identification is so restricted, and the restriction is not controlling of public perception. *See In re Aquitaine Wine USA, LLC*, 126 USPQ2d 1181, 1187-88 (TTAB 2018). *Cf., e.g., In re Clorox Co.*, 578 F.2d 305, 198 USPQ 337, 340 (CCPA 1978) ("[T]he locus of potential confusion is [not] in the files of the PTO."); *In re Wada*, 48 USPQ2d 1689, 1692 (TTAB 1998) (public is unaware of disclaimers that "quietly reside" in the records of the Office).

Moreover, Applicant cannot avoid a finding of deceptive misdescriptiveness by excluding from its identification the very characteristic that its mark is misdescribing. *Cf. In re ALP of South Beach, Inc.*, 79 USPQ2d 1009, 1010 (TTAB 2006) ("We find that the word CAFETERIA used in connection with restaurant services that explicitly exclude cafeteria-style restaurants does misdescribe the services."). In addition, the record is devoid of any evidence that, as Applicant proposes, the word "clear" suggests other meanings when used for or in connection with footwear or clothing. Even so, that a term may have other meanings in different contexts is not controlling. *See In re Bright-Crest, Ltd.*, 204 USPQ 591, 593 (TTAB 1979). "It is well settled that so long as any one of the meanings of a term is descriptive [or misdescriptive], the term may be considered to be merely descriptive

[or misdescriptive]." *In re Mueller Sports Med., Inc.,* 126 USPQ2d 1584, 1590 (TTAB 2018); *In re Canine Caviar Pet Foods, Inc.,* 126 USPQ2d 1590, 1598 (TTAB 2018).

Having determined that the term misdescribes the goods, we now assess whether consumers are likely to believe the misrepresentation. Again, the evidence shows that footwear and clothing may be transparent or "clear" or include "clear" elements, such as heels and straps on footwear and straps on clothing, and that those goods are described as such by those in the industry and by ordinary consumers. As the record reflects, "clear shoes were one of the big breakout trends on the spring/summer runways." As a result, consumers seeing the proposed mark CLEAR for footwear and clothing items are likely to believe that those items are clear or transparent even though they are not.

We are not persuaded by Applicant's assertion that reasonably prudent consumers are unlikely to believe the "misrepresentation," because footwear and clothing are goods that buyers will visually inspect before purchase. In making this argument, Applicant relies on three Board decisions: *In re Econoheat, Inc.*, 218 USPQ 381, 383 (TTAB 1983) (SOLAR QUARTZ for space heaters), *Nw. Golf Co. v. Acushnet Co.*, 226 USPQ 240, 242-43 (TTAB 1985) (POWER-STEP for golf clubs), and *In re Robert Simmons, Inc.*, 192 USPQ 331, 333 (TTAB 1976) (WHITE SABLE for paint brushes made from synthetic fibers).

We find these decisions to be distinguishable in material respects from this case. Unlike this case, the mark at issue in *Robert Simmons* included the word "sable," which is defined in, for example, the online version of MERRIAM-WEBSTER, as "the

color black," yet the mark also included the term "WHITE" the antithesis of "black" so consumers would not be deceived into believing WHITE SABLE paint brushes would be made from the hair or fur of a sable.[19] In *Northwestern Golf*, unlike here, the term at issue ("STEP") did not necessarily have a misdescriptive meaning to consumers: purchasers would not "necessarily construe the word 'STEP' in applicant's [POWER-STEP] mark as signifying that applicant's golf club shaft has but a single step."[20] *Nw. Golf,* 226 USPQ at 242. Rather, "they might just as readily believe that the word 'STEP' is used in the mark as a synonym for 'step pattern.'" *Id.* at 243. Finally, in *Econoheat*, there did not appear to be any evidence of solar-powered quartz space heaters and, in fact, the term "Solar" referred to some other attribute of the device: the type of heat emitted. *See* 218 USPQ at 382. Here, by contrast, there is plentiful evidence of use of the term "clear" to describe transparent examples of the goods at issue, and Applicant has offered no other possible meaning the term could have in the context of these goods. Accordingly, we do not find that these cases support Applicant's arguments.

Just because upon visually inspecting Applicant's footwear or clothing items consumers may understand that they do not include transparent or clear attributes

---

[19] www.merriam-webster.com/dictionary/sable, last visited March 15, 2021. The Board may take judicial notice of dictionary definitions, including online dictionaries which exist in printed format. *See In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014), *aff'd*, 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016); *In re CyberFinancial.Net Inc.*, 65 USPQ2d 1789, 1791 n.3 (TTAB 2002).

[20] The term "step" in that context meant a discrete point on the shaft of a golf club where the shaft narrowed as it extended further from the handle and approached the club head. *Nw. Golf,* 226 USPQ at 241.

does not negate their understanding before they inspect the goods. If Applicant's goods were to be promoted by word-of-mouth or on social media or in print (*e.g.*, in fashion blogs, magazine articles, or even Applicant's future advertising) without an image of the goods, a reasonable consumer seeking what the record shows to be a fashion trend would believe that Applicant's goods, promoted under the proposed CLEAR mark, would feature transparent or clear attributes. *See, e.g., In re Woodward & Lothrop Inc.*, 4 USPQ2d 1412, 1414 (TTAB 1987) (CAMEO held deceptively misdescriptive of jewelry items because while a reasonable purchaser carefully examining jewelry which has no cameos or cameo-like elements may not be deceived into believing that it does, not all jewelry would be purchased in that manner; some jewelry may be purchased from catalogs which either inadequately describe or depict the jewelry items.); *see also ALP of South Beach*, 79 USPQ2d at 1014 (finding that pre-sale deception may occur without a sale taking place based on the deception). Pre-sale discussion and promotion leading to deception is likely in this case given the popularity of footwear with clear accents or elements and the fact that Applicant at one time offered a shoe with clear accents.

In view of the above, we find that the second part of the deceptive misdescriptiveness test also has been satisfied.

C. Conclusion

After reviewing the evidence of record, we find that both parts of the deceptive misdescriptiveness test have been satisfied and are unrebutted and, accordingly, Applicant's proposed mark is deceptively misdescriptive within the meaning of

Section 2(e)(1). In view of our determination on the ground of deceptive misdescriptiveness, the alternative ground for refusal that the mark is merely descriptive is moot.

**Decision**: The refusal to register Applicant's proposed mark CLEAR for the identified goods on the ground that it is deceptively misdescriptive under Trademark Act Section 2(e)(1) is affirmed.